[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This case will determine the custody of a seven year old boy named Curt R., Jr. The court has before it two motions CT Page 7580 for custody. The first filed by Curt R., Sr., the boy's natural father, asks that custody be given to him; the second requests that permanent custody be granted to Mark J., the boy's step-father and temporary custodian. A certain amount of the procedural history of this file must be given to place these motions in proper context.
Curt R., Jr. was born on June 2, 1989, natural son of Curt R., Sr. and Karen G. On January 5, 1993 mother filed a petition in the New London Probate Court seeking to terminate father's parental rights with father's written, acknowledged consent. Father was incarcerated in Connecticut at the time. Father was appointed counsel and subsequently moved to transfer the petition to the Superior Court, which motion was granted. Father was allowed to withdraw his consent by the court on October 28, 1993. Mother then alleged all four nonconsensual grounds for termination. At some point prior to the trial mother had married Mark J. Mother, father, and step-father all testified at the trial of the termination petition.
On July 25, 1994 the court, Handy, J. denied mother's petition to terminate father's parental rights, and awarded custody of Curt, Jr. to mother with reasonable rights of visitation to father, subject to eight conditions. Tragically, mother was killed in a motorcycle accident on July 21, 1994. The memorandum of decision has a handwritten amendment dated July 22, 1994 awarding temporary custody to step-father.
On August 8, 1994, the Court retained jurisdiction over the issue of Curt Jr.'s custody, and amended its memorandum of decision with respect to visitation conditions #7 and #8, so that the reference to "mother" in each was changed to "stepfather." Step-father's motion to intervene was granted. New counsel also was appointed for father, at father's request.
Visitation issues were dealt with on several occasions while these subject motions were pending, ultimately resulting in an order that the reintroduction of father with son be accomplished by supervised visits taking place at the Child and Family Agency in New London.
Testimony regarding the motions was given by father; Kathleen Smith, who supervised visitation for the Child and CT Page 7581 Family Agency; Pat Silva of the Department of Children and Families, who had authored reports for the court in the termination proceeding; Attorney Robert McCoy, father's counsel in the termination proceeding; Ashley Saunders, M.S.W. of the Child Guidance Clinic, who is the child's therapist; Dr. Robert Meier, a psychologist who performed court ordered psychological evaluations, including parent-child evaluations, of father, step-father, and child; and Mark J., step-father.
Step-father claims that he is the psychological father of Curt, Jr., the boy having lived in his household for many years. He says that he has nurtured Curt, Jr., provided for all his needs, and provides the stable, secure home the boy's best interests require. He further claims the boy is fearful of his natural father, based on abuse the child suffered or witnessed while living with mother and natural father.
Father claims that as the boy's natural father and as the surviving parent, he is entitled to custody. He says that his long separation from his son stemmed initially from his agreement to plead guilty to a crime and accept incarceration in part to protect his then wife, the boy's mother, who was his accomplice. The plea agreement, according to father, would allow mother to remain free to care for their son. Father claims that all his subsequent actions involving his son, including his consent (later revoked) to terminate his parental rights, were caused by mother's lies. He implies that step-father participated in mother's deceptions. Father says the allegations that Curt, Jr. fears him because of past abuse, physical and emotional, are wrong. He says Curt, Jr. knows and loves him as his father, and is confused and mistaken about his early childhood with father, because of false memories indoctrinated in the child by mother and step-father.
Both father and step-father profess they love Curt and want the best for him. Each man avers that he, in the boy's best interest, should serve as Curt's custodian. Each states that the other will remain fully involved with the boy, as each claims that he will cooperate fully with respect to contact and visitation.
"There can be no lingering doubts that the family unit, including the rights of parent and child, is accorded constitutional protection. The integrity of the family unit has found protection in the Due Process Clause of the CT Page 7582 Fourteenth Amendment, [and] the Equal Protection Clause of the Fourteenth Amendment . . . [T]he United States Supreme Court has now recognized on numerous occasions that the relationship between parent and child is constitutionally protected. A father, no less than a mother, has a constitutionally protected right to the companionship, care, custody, and management of the children he has sired and raised, which undeniably warrants deference and, absent a powerful countervailing interest, protection. Parental rights are not, however, beyond limitation in the public interest. The United States Supreme Court has stated that biological relationships are not the exclusive determinants of the existence of a family. One [state] court puts it this way: The function of parenthood is not purely a matter of biology. Persons other than natural parents may occupy the relationships of parent to the child. A state's constitutional interest extends to the welfare of the child." (citations omitted; internal quotations omitted.) McGaffin v. Roberts, 193 Conn. 393, 400-401, (1984).
General Statutes § 46b-56b establishes the presumption that, in a custody dispute between a parent and non-parent, it is in the child's best interest to be in the custody of the surviving parent rather than a non-parent, which presumption may be rebutted by showing that it would be detrimental to the child to permit the parent to have custody.
The court heard evidence presented by both father and step-father and makes its decision based on the best interest of the child. Evans v. Santoro, 6 Conn. App. 707, 712
(1986).
Ashley Saunders testified as an expert witness. Mr. Saunders has been the child's therapist for over 2 1/2 years. He identified step-father, Mark J., as Curt Jr.'s psychological parent, that is the person Curt, Jr. identifies as filling the parenting function and responsibilities, and to whom the boy has the most emotional attachment. He stated that Curt, Jr. harbors core negative feelings toward his biological father, and has great anxiety still that his natural father would not return him if visits were unsupervised. He further indicated that he saw no evidence that step-father was influencing Curt, Jr. negatively with respect to Curt, Sr. He also said step-father appears to be meeting the boy's physical, emotional and educational needs. CT Page 7583 He testified that keeping the boy in his step-father's home would be in his best interests, and that removing Curt, Jr. from step-father's home would be devastating to the boy. He did say that a long term commitment to Curt, Jr. by Curt, Sr. would benefit the boy, but that visitation for the foreseeable future should be supervised.
Dr. Robert Meier also testified as an expert. Dr. Meier had evaluated the three principals on October 11, 1994 and recommended then that a long term plan to reunify Sr. and Jr. would be benefitted [benefited] by Jr.'s placement with a third party other than his step-father and natural father. Dr. Meier says now that opinion is no longer valid. The boy has bonded fully with his step-father, who has met all his needs in this lengthy period following mother's death, and has helped the child cope with that overwhelming loss. He noted that the visits between biological father and child have been inconsistent, with some long gaps.
Dr. Meier re-evaluated the boy with both natural and step-father in December, 1995. He found a great deal of anger in Curt, Jr.'s play with Curt, Sr., as well as fear on the boy's part that he would be removed from his step-father's home. He opined that the boy should stay with his step-father, and that it is unlikely that Curt, Sr. could replace Mark J. as the boy's psychological parent. Further, he said it would not be in Curt, Jr.'s best interest to attempt such a change. Dr. Meier indicated that Curt, Jr. has a great deal of trouble trusting people, but has developed a close, comfortable bond with Mark J. He further stated that biological father may, over a long period of time, be able to develop a sound relationship with his son if he put his own needs second to Curt, Jr.'s needs, accepts that his son is fearful of him and anxious about losing Mark J., and accepts that Mark J. has become the psychological parent of Curt, Jr.
The testimony of Karen Smith from the Child and Family Agency and Pat Silva from Department of Children and Families corroborated the strained visitations and relations between Curt, Sr., and Jr. They also confirmed that Curt, Sr.'s visits were irregular, often missed for no stated reason, or without valid excuse.
Curt, Sr.'s claim is that he knows his son better than others, and that he has been victimized by his now deceased CT Page 7584 ex-wife and by step-father, as well as by the court process. His testimony showed an inability or unwillingness to accommodate his son's needs when perceived in conflict with his own desires.
When termination of his parental rights was denied, father was told, among other conditions, to follow any recommendations of the therapist, abide by a structured visitation schedule, and complete a parenting class. Attorney McCoy testified that father understood he had to do these as a precondition to reunification. No credible evidence was offered that Curt, Sr. had completed a parenting class or a course of counseling. The original supervised visitation under the auspices of the Norwich Youth Services Bureau was cancelled quickly because Curt, Sr. missed three consecutive visits. Months elapsed before visits were reinstated, and father offered no valid explanation for his disregard of his son during this period.
Father also testified that he has had a succession of jobs which would allow him to contribute to his son's financial support, but has contributed a total of $30.00. Curt, Sr. also conceded that in direct violation of the court's order for supervised visits only, he went to Jr.'s school and visited alone with the boy. His stated purpose was to allow Jr. to give Sr. a birthday card, which was to be done the day before at a supervised visit, which visit was cancelled by step-father. What it demonstrated was the primacy of father's own needs in relation to his son.
Curt, Sr. asks this court to reject the opinion of both experts and find that Curt, Jr's. best interest would be served by accepting Sr.'s statutory presumption as the surviving guardian. The court is free to accept or reject, in whole or in part, any opinion offered by an expert as to custody. Yontef v. Yontef, 185 Conn. 275, 281 (1981).
In Curt, Jr.'s case the evidence is overwhelming that Mark J. is the boy's psychological parent; that he has met the boy's physical, emotional and educational needs on a consistent basis; and that he and Curt, Jr. have forged a close bond. While Curt, Sr. loves his son, he has not served as father and to force that role upon the child would be detrimental to Curt, Jr. CT Page 7585
Accordingly, pursuant to General Statutes § 46b-57 the court awards full custody of Curt R., Jr. to his step-father, Mark J. with reasonable rights of visitation to Curt, Sr. Said visitation is to be supervised by a neutral third party or agency mutually agreed upon by Curt, Sr., Mark J. and the child's therapist (if the child remains in therapy), with any transition to unsupervised visitation to be by mutual agreement of the same three.
Curt, Sr. will contribute toward Curt, Jr.'s support in accordance with the current guidelines for support.
A copy of this decision is to be sent simultaneously to Ashley Saunders, the boy's therapist, for use by him in his therapeutic treatment and with no further disclosure allowed by him without further court order.
Dated at Montville, Connecticut this 16th day of October 1996.
John C. Driscoll, Judge