TOP OF THE TOWN, LLC, ET AL. *v.* SOMERS
SPORTSMEN'S ASSOCIATION, INC.
(AC 20841)

Lavery, C. J., and Foti and Peters, Js.

Argued October 31, 2001—officially released May 21, 2002

*Christopher M. Harrington*, with whom were *Bruce D. Tyler* and, on the brief, *William J. Kupinse, Jr.*, for the appellants (named plaintiff et al.).

*John H. Parks*, for the appellee (defendant).

*Opinion*

LAVERY, C. J. The plaintiffs Top of the Town, LLC, Thomas V. Marshall and Tyrone W.G. Marshall appeal from the judgment, rendered after a trial to the court, determining that the defendant, Somers Sportsmen's Association, Inc., had gained title to approximately twenty-three acres of the plaintiffs' property through adverse possession. They claim on appeal that the court improperly found that the defendant was not occupying the land with the landowners' implied permission and failed to find that the defendant's recognition of title in the Marshalls defeated its ownership claim. They also claim that the court improperly found that the deeds to the disputed portion of the property were void. We conclude that the court improperly put the burden on the landowners to establish ownership rather than on the defendant to show that its possession was under a claim of right. We also conclude that the error was harmful because the evidence relied on by the court did not legally and logically support the conclusion that the defendant held the property under a claim of right. Accordingly, we reverse the judgment of the trial court.

In November, 1954, Robert A. Galbraith acquired contiguous parcels totaling approximately ninety to ninety-five acres that straddle Somers and Stafford.[1] In 1957, he orally gave the defendant, of which he was a member, permission to use a portion of the property as a gun club and shooting range.

Galbraith continued to live in a house on the property with his mother and sister until his death on November 23, 1967. Pursuant to the terms of his will, which did not refer to the defendant's use, the property was deeded to a testamentary trust on January 14, 1974. The trust's terms gave successive life estates to Galbraith's mother and two sisters. Annabelle G. Marshall, the last surviving life estate holder, died on December 28, 1994. The trust ended on January 2, 1996, and the property was distributed in fee simple to Galbraith's nephews, the plaintiffs Tyrone Marshall and Thomas Marshall. At the time of the trial, Thomas Marshall continued to reside in the house.

In 1997, the defendant offered to purchase the entire property from the Marshalls. Pursuant to a purchase and sale agreement created by the defendant, the defendant offered to pay $250,000, minus a monthly rent for Thomas Marshall to continue living in the house and one acre of curtilage. The purchase was never completed. The Marshalls instead sold the property on October 23, 1997, to the plaintiff. The purchase price was the same as that offered by the defendant, but the monthly rent for Thomas Marshall was lower.

On December 4, 1997, the plaintiff Top of the Town, LLC, issued a termination notice and notice to quit the

---

[1] In accordance with the parties' representation during the trial, the court's memorandum of decision states that the property is approximately sixty-five acres. Following a survey taken pursuant to settlement talks after the judgment, however, the parcel acreage was found to be approximately ninety to ninety-five acres.

premises to the defendant. When the defendant refused to vacate, the plaintiffs brought a summary process action. The defendant's second amended answer contained twenty special defenses and a nine count counterclaim. Essentially, the defendant argued that it owned the entire property by virtue of its longtime occupation.[2] Both the plaintiffs' subsequent motion for summary judgment and the defendant's motion to dismiss were denied. A five day trial to the court was held from April 21, 1999, to September 16, 1999.

In its memorandum of decision, the court found that the defendant adversely possessed the twenty-three acres that it had fenced off or posted with "No Trespassing" signs, but found no evidence that it possessed any other part of the property. Accordingly, it found for the defendant on the summary process complaint, rendered judgment for the defendant on the adverse possession and quiet title counterclaims, as well as the counterclaims asking for a declaratory judgment that the deeds from the Marshalls to the plaintiff were void, limited to the acreage that the club occupied. It rendered judgment for the plaintiffs on the remainder of the counts. This appeal followed. Additional facts will be provided as necessary.

"[T]o establish title by adverse possession, the claimant must oust an owner of possession and keep such owner out without interruption for fifteen years by an open, visible and exclusive possession under a claim of right with the intent to use the property as his own and without the consent of the owner." (Internal quotation marks omitted.) *1525 Highland Associates, LLC* v. *Fohl*, 62 Conn. App. 612, 622, 772 A.2d 1128, cert.

---

[2] The counterclaim included claims of adverse possession, quiet title, prescriptive easement, constructive trust, declaratory judgments that various deeds were void, reformation and violation of the Connecticut Unfair Trade Practices Act, General Statutes § 42-110a et seq.

denied, 256 Conn. 919, 774 A.2d 137 (2001); see also General Statutes § 52-575 (a).[3]

The key issue here is whether the defendant's use of the property after Galbraith's death in 1967 was under a claim of right. A "claim of right" does not necessarily mean that the adverse possessor claims that it is the proper titleholder, but that it has the intent to disregard the true owner's right to possession. *Horowitz* v. *F.E. Spencer Co.*, 132 Conn. 373, 378, 44 A.2d 702 (1945); *Mentz* v. *Greenwich*, 118 Conn. 137, 146, 171 A. 10 (1934). Conversely, "[i]f any [defendant] during the period in question recognized the plaintiff's ownership of the land, in words or by [its] conduct, the defendant cannot claim that [its] possession was adverse to the plaintiff." 2 D. Wright, Connecticut Jury Instructions (2d Ed. 1970) § 605, p. 638, citing *Horowitz* v. *F.E. Spencer Co.*, supra, 378–79; see also *Kramer* v. *Petisi*, 53 Conn. App. 62, 71, 728 A.2d 1097, cert. denied, 249

---

[3] General Statutes § 52-575 (a) provides in relevant part: "No person shall make entry into any lands or tenements but within fifteen years next after his right or title to the same first descends or accrues or within fifteen years next after such person or persons have been ousted from possession of such land or tenements; and every person, not entering as aforesaid, and his heirs, shall be utterly disabled to make such entry afterwards; and no such entry shall be sufficient, unless within such fifteen-year period, any person or persons claiming ownership of such lands and tenements and the right of entry and possession thereof against any person or persons who are in actual possession of such lands or tenements, gives notice in writing to the person or persons in possession of the land or tenements of the intention of the person giving the notice to dispute the right of possession of the person or persons to whom such notice is given and to prevent the other party or parties from acquiring such right, and the notice being served and recorded as provided in sections 47-39 and 47-40 shall be deemed an interruption of the use and possession and shall prevent the acquiring of a right thereto by the continuance of the use and possession for any length of time thereafter, provided an action is commenced thereupon within one year next after the recording of such notice. The limitation herein prescribed shall not begin to run against the right of entry of any owner of a remainder or reversionary interest in real estate, which is in the adverse possession of another, until the expiration of the particular estate preceding such remainder or reversionary estate."

Conn. 919, 733 A.2d 229 (1999), citing *Lazoff* v. *Padgett*, 2 Conn. App. 246, 250, 477 A.2d 155, cert. denied, 194 Conn. 806, 482 A.2d 711 (1984) (" 'possession of one who recognizes or admits title in another, either by declaration or conduct, is not adverse to the title of such other' "). As in the prescriptive easement context, a would-be adverse possessor's recognition of the true owner's right to terminate the permission shows permissive use. See *Klar Crest Realty, Inc.* v. *Rajon Realty Corp.*, 190 Conn. 163, 168, 459 A.2d 1021 (1983).

A finding of adverse possession "is not to be made out by inference, but by clear and positive proof. . . . '[C]lear and convincing proof' . . . denotes a degree of belief that lies between the belief that is required to find the truth or existence of the [fact in issue] in an ordinary civil action and the belief that is required to find guilt in a criminal prosecution. . . . [The burden] is sustained if evidence induces in the mind of the trier a reasonable belief that the facts asserted are highly probably true, that the probability that they are true or exist is substantially greater than the probability that they are false or do not exist." (Citations omitted; internal quotation marks omitted.) *Wildwood Associates, Ltd.* v. *Esposito*, 211 Conn. 36, 42, 557 A.2d 1241 (1989). The burden of proof is on the party claiming adverse possession. *Kramer* v. *Petisi*, supra, 53 Conn. App. 67.

Despite that exacting standard, our scope of review is limited. "Adverse possession is a question of fact, and when found by the trial court will not be reviewed by this court as a conclusion from evidential facts, unless it appears that these facts, or some of them, are legally or logically necessarily inconsistent with that conclusion." (Internal quotation marks omitted.) *Wildwood Associates, Ltd.* v. *Esposito*, supra, 211 Conn. 43. With that standard in mind, we address the plaintiffs' appeal.

The plaintiffs argue that the defendant occupied the land with implied permission from Galbraith's death in 1967 until the plaintiff Top of the Town, LLC, issued a notice to quit in 1997. The defendant counters that the court properly found that Galbraith's oral license was revoked upon his death and its possession thereafter was under a claim of right. It concludes that it gained the property by adverse possession in 1982.

The court properly found that the original arrangement between Galbraith and the defendant was that of a license. "[A] license in real property is a mere privilege to act on the land of another, which does not produce an interest in the property . . . ." (Internal quotation marks omitted.) *Middletown Commercial Associates, Ltd. Partnership* v. *Middletown*, 42 Conn. App. 426, 440, 680 A.2d 1350, cert. denied, 239 Conn. 939, 684 A.2d 711 (1996). It also properly found that this license expired upon Galbraith's death in 1967. See *Bland* v. *Bregman*, 123 Conn. 61, 65, 192 A. 703 (1937); *Prince* v. *Case*, 10 Conn. 374, 382–83 (1835).

Although the license terminated in 1967, the court improperly concluded that the defendant's occupation automatically converted to a claim of right. "[O]ne who enters into the possession of land in subordination to the title of the real owner, is estopped from denying that title while he holds actually *or presumptively* under it." (Emphasis added.) *Catlin* v. *Decker*, 38 Conn. 262, 266 (1871). As with a prescriptive easement, implied permission by the true owner is not adverse. See *Phillips* v. *Bonadies*, 105 Conn. 722, 725, 136 A. 684 (1927).

Although possession that is originally permissive may become hostile, it does so only if [the permission] is "clearly repudiated by the occupant." 3 Am. Jur. 2d 149, Adverse Possession § 53 (1986); see also A. Sedgwick & F. Wait, Trial of Title to Land (1882) § 730, p. 508; R. Tyler, Law of Adverse Enjoyment (1876) p. 85. Such

repudiation must be shown by "some clear, positive, and unequivocal act brought home to the owner" or the use will be presumed to be permissive. 3 Am. Jur. 2d 149, supra; A. Sedgwick & F. Wait, supra, § 749, p. 539; R. Tyler, supra, p. 877.

The court improperly put the burden on the plaintiffs to establish their ownership interest rather than on the defendant to show that its possession was under a claim of right. The memorandum of decision is replete with statements from which we conclude that the court found that the defendant's occupation was under a claim of right because the trustees failed to give it express permission to occupy. The court found that "[o]n Galbraith's death, it was incumbent upon his executor and subsequently his trustees to preserve and protect the trust assets." The court found, however, that the trust officers never "undertook to define the relationship of the [defendant] with [the trust] as trustee. Although the trust officer was under the assumption that the [defendant] was in possession with permission, he never required that the permission be acknowledged by the [defendant]. The trust officer never met with the officers of the [defendant] to discuss the [defendant]'s use of the Galbraith property." The court also cited the trustee's few visits to the land occupied by the gun club, the failure to charge the defendant rent while it charged rent to a life tenant and the trustee's successful lobbying in 1984 for the defendant to be taxed directly for improvements it made to the property.

The court found that once Galbraith's express license was terminated, "the possession of the premises by the [defendant] was open, visible, exclusive and without license or consent of the trustees . . . ." Those findings are inconsistent with the law that the burden is on the *claimant* to prove that the possession was under a claim of right, not on the true owner to show that it was permitted. Cf. *Horowitz* v. *F.E. Spencer Co.*, supra,

132 Conn. 377 (affirming court's finding of prescriptive easement where "nothing in the record" suggested court did not put burden of proof on claimants).

Our conclusion that the court improperly placed the burden of asserting ownership on the plaintiffs is further supported by the landlord-tenant case that it relied on to support the principle that a long occupation may raise a presumption that the occupant holds adversely to the true owner. See *Camp* v. *Camp*, 5 Conn. 291 (1824). In addition to the *Camp* case cited by the court, a similar presumption was found to be appropriate in *Hanford* v. *Fitch*, 41 Conn. 486, 499–500 (1874).

In those cases, however, the adverse possessor gave notice that it was holding under a claim of right, and the title owner had not been on the property for many decades. In *Camp*, both parties agreed that the defendant occupied under a claim of right for fifty-seven years without any interference from or interaction with the lessor's family and that the original lessor never owned or occupied the land. Id., 301–302. Likewise, in *Hanford*, the plaintiff had "ample notice from the acts of the parties holding the land" that they were doing so under a claim of right and that the plaintiff abandoned the property when she left Connecticut nearly fifty years earlier. *Hanford* v. *Fitch*, supra, 41 Conn. 501. Here, the life tenants and Thomas Marshall continued to occupy the land and to interact with the defendant without any notice that it was occupying under a claim of right.

*Camp* and *Hanford* also noted that their holdings were in derogation of the general principle that "a tenant is estopped to deny the title of his landlord, and although a person once a tenant will, prima facie, be deemed to continue in that character so long as he remains in possession . . . ." Id., 499–500. Even if a limited exception for longtime possessors exists in land-

lord-tenant law, it would not relieve a licensee of its burden to show that its possession was under a claim of right, even when the occupancy is long-standing. See *St. Peter's Church* v. *Beach*, 26 Conn. 355, 365 (1857) (approving of jury charge instructing that key issue was whether licensee carried its burden to show actions were under claim of right).

In arguing that the court did not shift the burden to the plaintiffs but instead found that the defendant's possession was under a claim of right, the defendant at oral argument directed us to portions of the memorandum of decision in which the court found that the disputed property was enclosed by a locked gate and fence, that the defendant maintained the road with crushed stone and that signage informed of the existence of a gun club and "No Trespassing." As the defendant conceded, however, all of those were in place when the original license was in effect. Similarly, the rifle range, pistol range, archery target area, turkey shoot and trap range and clubhouse were built in the 1950s or 1960s. Since the expiration of the license, most of the improvements merely have modernized what already was in place, such as covering the rifle range, building a storage shed and putting in a trailer.[4] The defendant's occupation since 1967 is not a difference in kind, but in intensity. Although membership in the club doubled from 115 to between 220 and 230 since 1970, the defendant conceded at oral argument that Galbraith's original license did not put any limitation

---

[4] The fact that the defendant improved the disputed twenty-three acres does not necessarily require a finding that it adversely possessed the property. Permanent structures built by a licensee become the property of the licensor unless the structures can be removed and their removal was contemplated by the parties. See *Prince* v. *Case*, supra, 10 Conn. 378–79. As one treatise states, "there are no equities in favor of a person seeking to acquire property of another by adverse holding." 10 G. Thompson, Real Property (Thomas Ed. 1994) 108, § 87.05.

on the amount of membership or use. The defendant also conceded that Thomas Marshall was a member of the organization, and that there was evidence at trial that he was not charged annual membership dues.

Having concluded that the court improperly allocated the burden of proof, we also must decide whether the error was harmful in that it likely affected the result. See *Evans* v. *Santoro*, 6 Conn. App. 707, 712, 507 A.2d 1007 (1986). We conclude that it was. The court's conclusion that the defendant had been in possession of the land, "using it as [its] own" since Galbraith's death in 1967 cannot stand. Not only does the evidence not logically support the conclusion that the defendant gave notice that it was occupying under a claim of right, but it rather supports that it recognized that it occupied the land with permission. Although the town agreed in 1984 to tax the defendant for improvements, the trust continued to pay taxes on the underlying property. Payment of property taxes is " 'powerful evidence' " to show that the occupier claimed the land as his own; *Wren* v. *Parker*, 57 Conn. 529, 531, 18 A. 790 (1889); see also *Merwin* v. *Backer*, 80 Conn. 338, 345, 68 A. 373 (1907); *Merwin* v. *Morris*, 71 Conn. 555, 574–75, 42 A. 855 (1899); *Kelman* v. *McDonald*, 24 Conn. App. 398, 399–400, 588 A.2d 667 (1991); although it is not dispositive. See *Marshall* v. *Soffer*, 58 Conn. App. 737, 745–46, 756 A.2d 284 (2000). In addition to impliedly recognizing that it did not own the property by paying taxes on the improvements but not on the property itself, the defendant seemed to recognize expressly that it was occupying the land with permission until shortly before the plaintiff Top of the Town, LLC, issued the termination notice. Its newsletters detailed its offer to purchase the entire property from the Marshalls and discussed the possibility that it may have to move to another site if it was unable to do so. At no point did the newsletters, the mailing lists for which included Tyrone Marshall,

note that the defendant had the right to remain on the property by way of adverse possession.

Because we conclude that the court's finding that the defendant showed by clear and convincing evidence that it held the property under a claim of right was legally and logically inconsistent with the evidence and that the defendant did not prove its claim of adverse possession, we conclude that the court also improperly found that the deeds were void.

The judgment is reversed and the case is remanded for a new trial.

In this opinion the other judges concurred.