LAURIE J. ALLEN *v.* RICHARD E. JOHNSON ET AL.
(AC 22901)

Lavery, C. J., and Schaller and West, Js.

Argued February 13—officially released September 30, 2003

*David M. Sheridan*, with whom, on the brief, was *Monique G. Rubb*, legal intern, for the appellants (defendants).

*Anthony F. DiPentima*, for the appellee (plaintiff).

*Opinion*

LAVERY, C. J. The defendants, Richard E. Johnson and Joanette Wright Johnson, appeal from the judgment, rendered after a trial to the court, determining that the plaintiff, Laurie J. Allen, had gained title to a portion of their property through adverse possession. The dispositive issue on appeal is whether the purchase by the plaintiff's predecessor in title of lot 10A from the defendants' predecessor in title and the circumstances surrounding that conveyance constituted an acknowledgment by the plaintiff's predecessor in title that the defendants' predecessor in title held superior title to the portion of the defendants' property at issue, thereby interrupting the fifteen year statutory requirement for adverse possession. We conclude that it did constitute

an acknowledgment, and, accordingly, reverse in part the judgment of the trial court.[1]

The following facts are not disputed and are relevant to our resolution of the defendants' appeal. The parties are the owners of adjoining parcels of land on Steeples Road in Washington. The plaintiff is the record owner of the parcel at 26 Steeples Road (lot 12). The plaintiff's father, Robert J. Allen, acquired title to lot 12 by warranty deed from Paerce Kearney on September 22, 1970. In 1972, the Allens planted a line of white pine trees along what they considered to be the western boundary of their property. On January 16, 1979, Robert Allen quitclaimed his interest in lot 12 to his wife, Jeanette L. Allen, who, on January 15, 1993, conveyed it to her daughter, the plaintiff.

The defendants are the record owners of the parcel at 24 Steeples Road (lot 10), which adjoins the western boundary of lot 12. They acquired title to lot 10 by warranty deed from Massasoit Corporation (Massasoit) on March 23, 2000. Massasoit had acquired title to the parcel in September, 1984, by warranty deed from William Allan. At that time, Massasoit had lot 10 surveyed, which revealed that Robert Allen had constructed a tool shed on the eastern boundary of lot 10. In November, 1984, Robert Allen arranged a meeting with Robert Shea, the president of Massasoit, because he was concerned about the location of the boundary line between lot 10 and lot 12. On November 20, 1984, Robert Allen met with Shea at the surveyed boundary line between the two lots. At that meeting, Robert Allen reiterated his concern about the location of the boundary line and its close proximity to his driveway. He requested that the boundary line be adjusted westward. After further

---

[1] The defendants also claim on appeal that the court improperly determined that the plaintiff's possession of the subject property was exclusive and "open and visible." Because we conclude that the defendants' first claim is dispositive, we need not address the remaining issues.

negotiations, Massasoit agreed to sell to Robert Allen a small piece of lot 10 located in the area between the Allens' driveway and the line of white pines, which the Allens had thought was the western boundary of their property. As a condition of the purchase, Robert Allen was required to pay all legal fees and other expenses associated with the transfer. He also was required to apply for and to obtain zoning approval for the proposed conveyance on Massasoit's behalf because the conveyance of lot 10A would alter a filed subdivision.

Robert Allen hired a surveyor, George P. Burnham, who prepared a revised survey that showed a small triangular parcel of land, designated as lot 10A, which, when conveyed to the Allens, would move the boundary line between lot 10 and lot 12 six feet westward at the street line and approximately twenty feet westward in the area of the tool shed. Thereafter, the Allens, on behalf of Massasoit, obtained zoning approval for the

proposed conveyance from the Washington planning commission. On April 2, 1985, Jeanette Allen purchased lot 10A from Massasoit for $651. Subsequent to the transfer of lot 10A, the Allens continued to use and to maintain the land up to the line of white pine trees, including a portion of lot 10 lying to the west of lot 10A. In January, 1986, Shea, on behalf of Massasoit, sent a letter to Robert Allen, requesting that he remove a woodpile that the Allens had "maintained on the side of Massasoit's lot which immediately adjoins [the Allens'] property." Robert Allen did not respond to Shea's letter and did not remove the woodpile from lot 10.

By complaint dated October 13, 2000, the plaintiff commenced this action to quiet title based on a claim of adverse possession. The disputed property consisted of a two pieces of land located on the eastern boundary of the defendants' property: A triangular piece west of lot 10A (first parcel) and another piece that runs along the boundary line between lot 10 and lot 12 (second parcel). After a trial to the court, the court rendered judgment in favor of the plaintiff on her claim with respect to the first parcel and in favor of the defendants on the plaintiff's claim with respect to the second parcel. This appeal followed.[2] Additional facts will be provided as necessary.

As a preliminary matter, we set forth our well established standard of review. "[T]o establish title by adverse possession, the claimant must oust an owner of possession and keep such owner out without interruption for fifteen years by an open, visible and exclusive possession under a claim of right with the intent to use the property as his own and without the consent of the owner." (Internal quotation marks omitted.) *Top*

---

[2] The plaintiff has not appealed from the court's judgment in favor of the defendants on the plaintiff's claim with respect to the second parcel.

*of the Town, LLC* v. *Somers Sportsmen's Assn., Inc.*, 69 Conn. App. 839, 842, 797 A.2d 18, cert. denied, 261 Conn. 916, 806 A.2d 1058 (2002).

A finding of adverse possession is to be made out "by clear and positive proof. . . . [C]lear and convincing proof . . . denotes a degree of belief that lies between the belief that is required to find the truth or existence of the [fact in issue] in an ordinary civil action and the belief that is required to find guilt in a criminal prosecution. . . . [The burden] is sustained if evidence induces in the mind of the trier a reasonable belief that the facts asserted are highly probably true, that the probability that they are true or exist is substantially greater than the probability that they are false or do not exist. . . . The burden of proof is on the party claiming adverse possession. . . .

"Despite that exacting standard, our scope of review is limited. Adverse possession is a question of fact, and when found by the trial court will not be reviewed by this court as a conclusion from evidential facts, unless it appears that these facts, or some of them, are legally or logically necessarily inconsistent with that conclusion." (Citations omitted; internal quotation marks omitted.) Id., 844. With that standard in mind, we address the defendants' appeal.

The defendants claim that the court improperly determined that Jeanette Allen's purchase of lot 10A from Massasoit did not constitute an acknowledgment of Massasoit's superior title to the first parcel and, thus, was not an interruption of the fifteen year statutory period. See General Statutes § 52-575. We agree with the defendants.

The defendants' claim requires us to review a finding of fact. "The standard of review with respect to a court's findings of fact is the clearly erroneous standard. The trial court's findings are binding upon this court unless

they are clearly erroneous in light of the evidence and the pleadings in the record as a whole. . . . We cannot retry the facts or pass on the credibility of the witnesses. . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed . . . ." (Internal quotation marks omitted.) *Blitz* v. *Subklew*, 74 Conn. App. 183, 186, 810 A.2d 841 (2002).

An adverse possessor may interrupt his or her continuous possession by acting in a way that acknowledges the superiority of the real owner's title. See *Lazoff* v. *Padgett*, 2 Conn. App. 246, 250, 477 A.2d 155, cert. denied, 194 Conn. 806, 482 A.2d 711 (1984). "[T]he possession of one who recognizes or admits title in another, either by declaration or conduct, is not adverse to the title of such other. . . . Occupation must not only be hostile in its inception, but it must continue hostile, and at all times during the required period of fifteen years challenge the right of the true owner, in order to found title by adverse use upon it. . . . Such an acknowledgment of the owner's title terminates the running of the statutory period, and any subsequent adverse use starts the clock anew." (Internal quotation marks omitted.) *Kramer* v. *Petisi*, 53 Conn. App. 62, 71, 728 A.2d 1097, cert. denied, 249 Conn. 919, 733 A.2d 229 (1999); see also *Top of the Town, LLC* v. *Somers Sportsmen's Assn., Inc.*, supra, 69 Conn. App. 843–44.

"[A]n offer to purchase the legal title, or an acceptance of a conveyance of title, as distinguished from a mere outstanding claim or interest, is a recognition of that title. Although efforts to obtain deeds from other claimants to the property do not disprove the hostile character of a possession, efforts to buy the property from the record owner constitute an acknowledgment of the record owner's superior title, and thus disprove

the adverse holding, because there has been no claim of right." 3 Am. Jur. 2d, Adverse Possession § 104 (2002); see *Tidwell* v. *Strickler*, 457 So. 2d 365, 368 (Ala. 1984); *Kerlin* v. *Tensaw Land & Timber Co.*, 390 So. 2d 616, 619 (Ala. 1980); *Manhattan School of Music* v. *Solow*, 175 App. Div. 2d 106, 107, 571 N.Y.S.2d 958 ("offer made by one in possession without title to purchase from the record owner during the statutory period is a recognition of the owner's title and prevents adverse possession from accruing"), leave to appeal denied, 79 N.Y.S.2d 820, 588 N.E.2d 89, 580 N.Y.S.2d 191 (1991); *Albright* v. *Beesimer*, 288 App. Div. 2d 577, 579–80, 733 N.Y.S.2d 251 (2001) (same); *Palumbo* v. *Heumann*, 295 App. Div. 2d 935, 935–36, 743 N.Y.S.2d 640 (2002) (same); *Shanks* v. *Collins*, 782 P.2d 1352, 1355 (Okla. 1989) (recognition by adverse possessor that title was in another as evidenced by adverse possessor's offer to purchase property negated requisite hostility); *Eddy* v. *Clayton*, 44 So. 2d 395, 397 (Miss. 1950) (same); *Chicago Mill & Lumber Co.* v. *Matthews*, 260 S.W. 963, 964 (Ark. 1924) (same); *Myers* v. *Beam*, 713 A.2d 61, 62–63 (Pa. 1998); 2 C.J.S., Adverse Possession §§ 185 and 186, pp. 905–906 (1972); 4 H. Tiffany, Real Property (3d Ed. 1975) § 1164, p. 869.[3] Moreover, an adverse claimant's purchase from the true owner of a part of the land adversely occupied may constitute an acknowledgment of the owner's superior title to the remainder, depending on the facts and circumstances of the particular case. See 2 C.J.S., supra, § 186.

It is undisputed that Jeanette Allen purchased lot 10A from Massasoit in April, 1985, and that subsequent to that transfer, the Allens continued to use and to maintain the first parcel, which is immediately to the west of lot 10A, in the same way as they had prior to the

---

[3] On the basis of those legal principles, clearly, the plaintiff's predecessor in interest acknowledged the superior title of the defendants' predecessor with respect to *lot 10A*.

transfer. On the basis of those facts and the court's apparent assumption that the conveyance of lot 10A was a means of settling *a dispute over rightful ownership* of that property,[4] the court concluded: "[N]either the plaintiff nor her predecessors in interest acknowledged or admitted that the record owner has title to the first parcel. Here, there was one meeting in which [Robert] Allen and Shea discussed [Robert] Allen's concern over the location of a boundary. The transfer of lot 10A by deed on April 2, 1985 [did] not interrupt [the] plaintiff's possession of the first parcel because that portion of the property was not part of the transfer . . . . Since more than fifteen years have passed from September 22, 1970, to March 23, 2000, the plaintiff has met the statutory fifteen year requirement. The first parcel has been uninterruptedly used by the plaintiff and her predecessors in interest exclusively and to the exclusion of others from 1970 to 2000."

Our review of the record persuades us that the court improperly found that Jeanette Allen's purchase of lot 10A from Massasoit did not constitute an acknowledgment of Massasoit's superior title to the first parcel. There are several pieces of evidence that indicate that the court's finding is clearly erroneous.

[4] Although the court did not expressly find that the conveyance of lot 10A was a means of settling a dispute over rightful ownership of that property, the legal principles applied by the court in the case relate only to situations in which such a dispute exists. For instance, in its memorandum of decision, the court sets forth the following legal principles: "A recognition by the adverse claimant of title in the owner will arrest the running of the period of limitations. . . . Negotiations or offers to purchase property from the owner *as a means of settling a dispute over rightful ownership* do not constitute an admittance that the record owner has title and, therefore, do not interrupt possession. . . . Generally, possession is interrupted where the adverse possessor accepts a deed from the record owner. . . . However, if the deed includes only a portion of the property so possessed, *or otherwise fails to settle the controversy*, it . . . should not be conclusive." (Citations omitted; emphasis added; internal quotation marks omitted.)

First, as a condition of the conveyance of lot 10A, the Allens were required to pay all legal fees and other expenses associated with the transfer, and to apply for and to obtain zoning approval for the proposed conveyance on Massasoit's behalf.[5] As part of the process of obtaining zoning approval, the Allens commissioned a survey in Massasoit's name. The survey, entitled "Map Prepared For Massasoit Corporation," clearly and unequivocally shows the division of lot 10 into lots 10 and 10A; however, it makes no reference to the "disputed" first parcel, which is shown to be within the adjusted lot 10. Thus, the survey shows that Massasoit held title to lot 10, and that both lot 10A and the first parcel were part of lot 10. The Allens never objected to or questioned the validity of the survey. In fact, on February 5, 1985, Robert Allen appeared before the Washington planning commission[6] and used that survey to obtain the commission's approval of the proposed subdivision and new boundary lines.[7]

Second, the warranty deed by which Jeanette Allen acquired title to lot 10A from Massasoit specifically

[5] In a February 7, 1985 letter addressed to Shea, the Allens' attorney, Reginald W. H. Fairbairn, stated in relevant part: "In connection with the . . . transaction, I am enclosing the following documents: 1. Warranty Deed; 2. Closing Statement; 3. Department of Revenue Services conveyance tax form; [and] 4. Photocopy of survey. . . . It is my understanding that [Robert] Allen is to absorb all the costs of conveying this property, including paying both conveyance taxes and recording fees." See also footnote 6.

[6] In a February 20, 1985 letter addressed to Shea, the Allens' attorney, Reginald W. H. Fairbairn, stated: "Pursuant to your request of February 15th, I am enclosing a copy of the minutes of the Washington Planning Commission meeting of February 5, 1985. Please note that this resubdivision application was approved by the Planning Commission."

The minutes of the February 5, 1985 meeting indicate that Robert Allen was present at that meeting.

[7] The resubdivision was approved without comment.

In *Esposito* v. *Stackler*, 160 App. Div. 2d 1154, 1155, 554 N.Y.S.2d 361 (1990), the appellate division of the New York Supreme Court held that the adverse possessors' acknowledgment of the location of their boundary line, when applying to the town for a building permit, was a factor mitigating against their claim of adverse possession.

refers to the survey. The deed, which was prepared by the Allens' attorney, states that lot 10A is described in the attached schedule A. Schedule A describes lot 10A in relevant part as "[a]ll that certain piece or parcel of land . . . being shown as Parcel 10A on a survey entitled 'Map Prepared For Massasoit Corporation Four Steeples Road Washington, Connecticut . . . October 6, 1984' by George P. Burnham . . . ." Schedule A further describes lot A as "a portion of the premises conveyed to the Massasoit Corporation by William Allen and Christine C. Allen by Warranty Deed dated September 24, 1984 . . . ."[8] Thus, that deed expressly states that prior to the transfer, Massasoit held title to lot 10 as shown on the survey and that *lot 10A was part of lot 10*. The Allens never disputed that language and, therefore, they acquiesced, via their silence, to Massasoit's claim of superior title.

Third, at trial, Shea testified that there was no dispute between Robert Allen and himself concerning the true location of the boundary line between lot 10 and lot 12, and that Robert Allen had "accepted the boundary" as surveyed by Massasoit. He also stated that Massasoit conveyed the property as "an accommodation" to its neighbor.[9] Shea's testimony is supported by the testi-

---

[8] We note that there appears to be a minor typographical error in schedule A with respect to the spelling of the name of Massasoit's predecessors in title. They spell their last name Allan not Allen.

[9] At trial, Shea further testified in relevant part: "I asked Mr. Allen what his concern was, and he said his concern was primarily the fact that the stake was so close—the boundary marker was so close to his property and it raised questions. He was afraid it might affect the marketability of his title, whether it was a proper zoning setback or whatever. And I asked him what he wanted, what was he requesting? And he said he'd like a six foot adjustment to move the property line westerly by six feet.

"And at the same time we talked about the tool shed that was encroaching on Massasoit's property, and I suggested to him that at the same time—if we acceded to the six foot movement, which we were not enthusiastic about doing because the frontage of the property is very valuable . . . but I said if we acceded to it, shouldn't we also clear up this thing about the tool shed, and I said, if you have a—if you want your attorney to prepare a deed and have the survey done to accomplish moving the line six feet at the road

mony of the plaintiff, who, when asked on cross-examination what precipitated the purchase of lot 10A, stated: "[A] survey was made that showed that the property line was closer to my mailbox . . . than we had understood it to be since 1970. And a tin garden house that was in the backyard then turned out to be on the lot next door. So, they purchased the land to include the tin house." There is absolutely nothing in the record that contradicts that testimony.[10]

Finally, the location of the first parcel supports the finding that the purchase of lot 10A by the plaintiff's predecessor in title constituted an acknowledgment of Massasoit's superior title to the first parcel. As previously noted, the first parcel is located immediately to the west of lot 10A. See prior map.

On the basis of those facts, we are left with the firm and definite conviction that the court improperly found that the purchase of lot 10A from Massasoit did not constitute an acknowledgment of Massasoit's superior title to the first parcel. We conclude therefore that the purchase of lot 10A by the plaintiff's predecessor in title

area, and then going back and jogging around the tool shed, making a sort of a right angle jog around the tool shed, that that way his tool—he wouldn't have to move the tool shed, and he would have the six feet that he asked for at the front.

"The—I said I'd leave it up to them to suggest a fair consideration for the conveyance. And it was left to him that his attorney would take the matter up."

[10] Our reading of the record indicates that in November, 1984, Robert Allen arranged a meeting with Shea because he was concerned about the location of the boundary line between lot 10 and lot 12. Massasoit's survey made the Allens aware for the first time that they were mistaken concerning the true location of the boundary line between their lot and lot 10 and that they had encroached upon a portion of Massasoit's property. The Allens never challenged the validity of Massasoit's survey nor the placement of the survey markers next to their driveway. Robert Allen requested Massasoit to convey a portion of its property to him, which Massasoit did as "an accommodation" to benefit its neighbor. There is nothing in the record to indicate otherwise.

and the circumstances surrounding that conveyance constituted an acknowledgment that the defendants' predecessor in title held superior title to all of lot 10, including the first parcel, and, therefore, interrupted the running of the statutory period. See *Kramer* v. *Petisi*, supra, 53 Conn. App. 71. Because the running of the statutory period was interrupted in April, 1985, at no time has the plaintiff or her predecessors in title maintained fifteen years of continued, uninterrupted adverse possession under a claim of right of the property at issue.[11] Accordingly, the court improperly rendered judgment in favor of the plaintiff on her claim of adverse possession with respect to the first parcel.

The judgment is reversed only as to the plaintiff's claim of adverse possession with respect to the first parcel and the case is remanded with direction to render judgment in the defendants' favor as to that claim. The judgment is affirmed in all other respects.

In this opinion the other judges concurred.

---

[11] The court expressly found that the statutory period ran from September 22, 1970, to March 23, 2000. Moreover, the record indicates that the parties agreed to maintain the "status quo" as of March 23, 2000, pending the present litigation. We note that March 23, 2000, is the date that the defendants acquired title to lot 10 from Massasoit.