## The Post Hill Improvement Company et al. *vs.* Augustus Brandegee et al.

Second Judicial District, Norwich, October Term, 1901.
Torrance, C. J., Baldwin, Hamersley, Hall and Prentice, Js.

The intent of the parties to a deed, as to what is conveyed by it, must be ascertained from the deed itself, read in the light of surrounding circumstances, and, when found, must control.

The parties were at issue as to the northern boundary of land conveyed by the defendants to the plaintiffs' grantors. The deed first bounded the *locus in quo* on the north by land of one of the defendants, and also referred to it as being a tract more particularly described in a certain deed to the defendants, the date and record of which were given. As thus defined there was no ambiguity in respect to the location of the northern boundary line; but the deed also recited that the premises conveyed were described "in a map and survey of the same" dated July, 1892, and this description, if followed, would materially reduce the area of the premises in question. The map was not attached to the deed nor recorded, nor was it, so far as appeared, ever seen by the plaintiffs or called to their attention.

*Held* that under these circumstances, and without resorting to any technical rules of interpretation, the description by reference to the map must give way to the other, which was definite, certain and controlling.

Argued October 15th, 1901—decided January 8th, 1902.

ACTION in the nature of ejectment claiming possession of a tract of land and damages, brought to the Superior Court in New London County and tried to the court, *Robinson, J.;* facts found and judgment rendered for the defendants, and appeal by the plaintiffs for alleged errors in the rulings and findings of the court. *Error, judgment set aside and cause remanded.*

The material facts found are these : In December, 1892, Augustus Brandegee and Charles A. Williams were the owners, as tenants in common, of a tract of land, which included the *locus in quo*, and was bounded on the north by land owned in severalty by said Williams. The land so held in common was in 1887 owned by George H. Purser, and in December of that year he conveyed it by a quitclaim deed to said Charles A. Williams. In that deed the premises were described as " bounded generally by Ocean Avenue on the east, the Ocean and Alewife Creek on the south, Alewife Creek on the west, and land of sd. Williams on the north." Shortly after obtaining this Purser land, Williams conveyed an undivided half interest in it to Augustus Brandegee. This was done by a quitclaim deed which recited that the premises "are more particularly described in George H. Purser's deed to me (Williams) dated Dec. 8, 1887, and recorded in New London land records in Book 75, Page 342;" and then bounded the land as follows : " north by my other land, east by Ocean Avenue, west by Alewife Cove & Creek & southerly by the ocean & sd. creek."

When these two deeds were delivered, Williams owned in severalty the land immediately north of the lands conveyed by them, and he so owned it when he and Brandegee delivered the deed to Waller and Hislop which is here in question. This land Williams acquired in 1882 by a deed from Henry R. Bond, in which its south boundary line was de-

scribed as an east and west line, about 785 feet long, running parallel with a certain stone fence, and 265 feet distant southerly from said fence.

On the 10th of December, 1892, Brandegee and Williams made and delivered a warranty deed to Waller and Hislop of a certain tract of land, which in said deed was bounded and described as follows: " on the north and east by other lands of C. A. Williams; on the east by Ocean Avenue; on the south and partly east by the harbor or ocean; on the west and partly south by Alewife Cove or Creek; and is more particularly described in the deed of George H. Purser to these grantors, dated December 8th, 1887, recorded in book 75, page 342 of New London Land Records, and also in a map and survey of the same by D. A. Daboll & Son, civil engineers, dated July —, 1892."

In January, 1893, Waller and Hislop by warranty deed conveyed the above-described premises to the plaintiff.

At some distance southerly of the south line of the land owned by Williams in severalty, was a stone wall running east and west and substantially parallel with said south line, called the " south wall" in the finding, to distinguish it from the " stone fence" on the north of said land owned by Williams in severalty.

The map and survey referred to in the deed of Brandegee and Williams to Waller and Hislop included only the land south of said stone wall, and showed said south wall as the north boundary of the land described in the map and survey. This map and survey was not recorded, and is now lost; but a copy of it exists and was used in evidence by the defendants on the trial.

The land in dispute is the land lying between the south line of the land owned by Williams in severalty, and said south wall.

The trial court held that the description in the map and survey was controlling on the question involved in the case, that the land in dispute was not conveyed by the deed to Waller and Hislop, and rendered judgment for the defendants.

*Tracy Waller* and *Charles B. Waller*, for the appellants (plaintiffs).

*Frank T. Brown* and *Walter C. Noyes*, for the appellees (defendants).

TORRANCE, C. J.   The principal dispute in this case relates to the location of the north boundary line of the land conveyed by Brandegee and Williams to Waller and Hislop. The plaintiff contends that that line is the south boundary of the land held by Williams in severalty, while the defendants claim that it is the south stone wall referred to in the finding, as shown on the copy of the map and survey.

We think the plaintiffs' contention is the right one.   That the Purser land, when it was conveyed to Williams in 1887, was bounded on the north by the land owned by Williams in severalty, is not disputed; and that this same land, bounded northerly in the same way, was owned by Brandegee and Williams in common, when they delivered their deed to Waller and Hislop, is not disputed.   In that deed they expressly bound the premises conveyed, northerly by " other lands of C. A. Williams," which statement, read in the light of the facts found, can only mean the land owned and held by Williams in severalty.   Furthermore, they expressly say, in effect, that the land intended to be conveyed by them is the same land described in the deed from Purser to Williams in 1887; for such, we think, is the fair effect of the reference to that deed contained in the deed to Waller and Hislop. The fact that this reference is mistakenly made to a deed to both grantors, instead of to Williams alone, is of no special significance here, for the deed is otherwise clearly identified in the reference.

Here, then, we have two things : the express statement of the grantors that the land conveyed is bounded northerly on the severalty land of Williams, and the express reference to the Purser deed which emphatically says in effect that the land conveyed is the entire Purser land.   If the deed had stopped here, no possible question could have arisen as to

the right of Waller and Hislop to the *locus in quo* under their deed from the defendants; but it does not stop here; it goes on to say that the conveyed premises are also described "in a map and survey of the same" made by Daboll & Son in July, 1892. The trial court found the north boundary line of the land described in said "map and survey" to be the south wall described in the finding, and not the south line of the land owned by Williams in severalty, and held that this description was the controlling one.

Now, assuming, without deciding, that the map and survey clearly showed the south wall as the boundary line, we think the court erred in holding that this was the controlling description. The map was not attached to the deed, was not recorded, nor, so far as appears, was it intended to be recorded, and, so far as appears, it was never seen by Waller and Hislop, or otherwise called to their attention. The intent of the parties to a deed, as to what is conveyed by it, must be ascertained from the deed itself, read in the light of the surrounding circumstances, and when found must control. The grantors in the deed in question say, in effect, that it includes all the land held by them in common, under the Purser deed, and extends northerly to the land owned in severalty by Williams. This is a particular, certain, definite description, about which there can be no dispute. They then add, in effect, that this same land is also described in a certain map and survey; and they are mistaken as to this. The fact that they mistakenly thought all the land held in common was also described in the map and survey, does not throw any doubt upon their prior intention, clearly expressed, to convey all that land.

Without resorting to any technical rules of interpretation, we think that under the circumstances of this case the conflicting addition, if it be one, to the description caused by a reference to the map, should have been rejected, and that the trial court should have held that the plaintiff was the owner of the *locus in quo*.

In this view of the case it becomes unnecessary to consider any of the other questions made in the case.

There is error, the judgment is set aside, and the case re-manded to be proceeded with according to law.

In this opinion the other judges concurred.