WILDWOOD ASSOCIATES, LIMITED *v.* NANCY M.
ESPOSITO ET AL.
(13407)

PETERS, C. J., SHEA, CALLAHAN, GLASS and COVELLO, Js.

Argued December 16, 1988—decision released April 25, 1989

*Morgan P. Ames,* with whom was *Joseph F. McVerry,* for the appellant-appellee (plaintiff).

*William F. Gallagher,* with whom was *Cynthia C. Bott,* for the appellees-appellants (defendants).

COVELLO, J. This is an action to quiet and settle title[1] to which is appended a claim for damages for libel or slander of title. The plaintiff, Wildwood Associates, brought a multiple count action against James and Nancy Esposito and their attorney, Benson Snaider, seeking: (1) a judgment quieting title to real property; (2) damages for trespass to land; (3) an injunction restraining the defendants' use of real property; and (4) damages for libel or slander of title to real prop-

---

[1] General Statutes § 47-31 provides in part: "(a) An action may be brought by any person claiming title to . . . real . . . property . . . against any person who may claim to own the property, or any part of it, or to have any estate in it . . . adverse to the plaintiff, or against any person in whom the land records disclose any interest, lien, claim or title conflicting with the plaintiff's claim, title or interest, for the purpose of determining such adverse estate, interest or claim, and to clear up all doubts and disputes and to quiet and settle the title to the property. . . .

"(b) The complaint in such action shall describe the property in question and state the plaintiff's claim, interest or title and the manner in which

erty. The defendants denied the material allegations of the complaint and counterclaimed seeking an injunction restraining the plaintiff's use of the disputed premises and a judgment establishing title in them by way of adverse possession or, in the alternative, an order declaring their right to use the land by reason of their having acquired an easement by implication or prescription.

At the close of the plaintiff's case, the trial court dismissed the third, fourth and fifth counts of the complaint, which alleged slander of title, and rendered judgment for the defendant Snaider. Thereafter, the trial court, having heard both parties, rendered judgment for the defendants on the complaint and on their counterclaim, concluding that they had acquired title to the disputed premises by adverse possession. The plaintiff appealed from that judgment and the Espositos cross appealed claiming, in the alternative, that they had established an easement by prescription or by implication.

The trial court found that the plaintiff and the Espositos were abutting owners of certain shore front real property on Cosey Beach Avenue in East Haven. The Espositos' property, by way of background, was designated as lot 13 on a subdivision map on file in the East Haven town clerk's office and entitled: "Map of Shore Lots at Silver Sands, Town of East Haven, Con-

the plaintiff acquired the claim, interest or title and shall name the person or persons who may claim the adverse estate or interest. . . .

"(d) Each defendant shall, in his answer, state whether or not he claims any estate or interest in, or encumbrance on, the property, or any part of it, and, if so, the nature and extent of the estate, interest or encumbrance which he claims, and he shall set out the manner in which the estate, interest or encumbrance is claimed to be derived. . . .

"(f) The court shall hear the several claims and determine the rights of the parties, whether derived from deeds, wills or other instruments or sources of title, and may determine the construction of the same, and render judgment determining the questions and disputes and quieting and settling the title to the property."

necticut, owned by Marion Hassan, John S. Madden Agent—1900.'' To the immediate west of lot 13, the subdivision map depicted a narrow strip of open land and to the west of that strip, a small creek that drained into Long Island Sound.

Although the subdivision map contained no street names, there was evidence before the trial court that the narrow strip of land to the west of lot 13 was to be designated as Marion Road. Throughout its eleven transfers between 1908 and 1977, when it was acquired by the Espositos, lot 13 was uniformly described as being bounded: ''NORTH: by Cosey Beach Avenue, 37.1 feet, more or less; EAST: by the West line of Lot 12 on said map and by a continuation thereof South in the same straight line to Long Island Sound, 150 feet, more or less; SOUTH: by Long Island Sound, 49 feet, more or less; *WEST: by Marion Road, so called, 150.54*

*feet, more or less, by a continuation thereof South in the same straight line to Long Island Sound."* (Emphasis added.)[2]

In due course, the small creek to the west of the proposed Marion Road was filled in and the plaintiff's property became a portion of a 44¾ acre residue distributed from the estate of Marion Hassan to Edward J. Hassan on August 1, 1919. The residue was in essence all the other land nearby the Silver Sands subdivision owned by Marion Hassan that had *not* been designated as a lot in the Silver Sands subdivision itself. The plaintiff's land continued as a portion of this residue until it was first conveyed as a separate parcel in 1946. At that time it was simply described as "a strip of land bounded: NORTH: by Cosey Beach Avenue; EAST: by land now or formerly of John J. McKeon and Anna H. McKeon; SOUTH: by Long Island Sound; WEST: by land now or formerly of Charles S. MacGilvray . . . ." The deed contained no dimensions.

On the basis of a physical inspection of the premises, the testimony of the defendants, the testimony of previous owners and occupants of lot 13, and the examination of numerous maps and photographs of the area, the trial court concluded that the Espositos and their predecessors in interest had acquired title by adverse possession to a portion of the proposed Marion Road that lay to the immediate west of lot 13. The area acquired was designated as parcel "B" on the so-called Schatzlein map, one of several maps introduced in evidence:

---

[2] The legal implications that would flow from Marion Road having become a public street are not present in this case as the trial court specifically found that the town of East Haven had not accepted the dedication to a public use by any formal action or by implication. See *Meshberg* v. *Bridgeport City Trust Co.*, 180 Conn. 274, 279, 429 A.2d 865 (1980).

COSEY     BEACH     AVENUE

WILDWOOD ASSOCIATES

ESPOSITO

N

PARCEL "B"

LONG   ISLAND   SOUND

(This is a composite drawing of the area in question.)

The trial court further concluded that the use made of the disputed premises "by the defendants' predecessor's in title, has been made openly, visibly, continuously, exclusively and adversely to the title holder of the plaintiff's lot and that use has continued uninterruptedly for much longer than fifteen years."

The factual basis for these conclusions lay in the trial court's predicate findings that for a period "much longer than fifteen years" the Espositos and their predecessors had enclosed the area by fencing, had laid a bituminous concrete driveway over a portion of parcel "B," had planted seagrass in the beach area of par-

cel "B" to prevent erosion and had cleared this beach area of debris following storms. The trial court further found that all of this had been carried out in an open and hostile manner and that no attempt was made by any record owner of the plaintiff's lot to interrupt and prevent the use, with the exception of one predecessor in title who had orally complained but had taken no legal action to interrupt or terminate the use.

On appeal the plaintiff first argues that the quality of the defendants' evidence was insufficient as a matter of law to support the trial court's conclusion that the Espositos had acquired title to the disputed premises by adverse possession. We do not agree.

Adverse possession "is not to be made out by inference, but by clear and positive proof." *Roche* v. *Fairfield,* 186 Conn. 490, 498, 442 A.2d 911 (1982); *Whitney* v. *Turmel,* 180 Conn. 147, 148, 429 A.2d 826 (1980); *Wadsworth Realty Co.* v. *Sundberg,* 165 Conn. 457, 462, 338 A.2d 470 (1973); *Robinson* v. *Myers,* 156 Conn. 510, 517, 244 A.2d 385 (1968). " '[C]lear and convincing proof'[3] denotes a degree of belief that lies between the belief that is required to find the truth or existence of the [fact in issue] in an ordinary civil action and the belief that is required to find guilt in a criminal prosecution. . . . [The burden] is sustained if evidence induces in the mind of the trier a reasonable belief that the facts asserted are highly probably true, that the probability that they are true or exist is substantially greater than the probability that they are false or do not exist." *Dacey* v. *Connecticut Bar Assn.,* 170 Conn. 520, 536–37, 368 A.2d 125 (1976).

Against this high standard of proof, however, we must also note the limited scope of our review in these

---

[3] We consider the phrase "clear and positive proof" to embody the same substantive standard as the phrase "clear and convincing proof." See *Lopinto* v. *Haines,* 185 Conn. 527, 534 n.9, 441 A.2d 151 (1981).

cases. " 'Adverse possession is a question of fact, and when found by the trial court will not be reviewed by this court as a conclusion from evidential facts, unless it appears that these facts, or some of them, are legally or logically necessarily inconsistent with that conclusion.' *Layton* v. *Bailey,* 77 Conn. 22, 28, 58 Atl. 355 [1904]." *Spencer* v. *Merwin,* 80 Conn. 330, 336, 68 A. 370 (1907); see also *Roche* v. *Fairfield,* supra, 498; *Padula* v. *Padula,* 138 Conn. 102, 110, 82 A.2d 362 (1951); *Lengyel* v. *Peregrin,* 104 Conn. 285, 288, 132 A. 459 (1926).

In advancing its argument that the quality of the proof does not rise to the "clear and convincing" standard required, the plaintiff singles out the hearsay testimony of both defendants concerning the out-of-court declarations of one "Lucy" McKeon. Both Espositos testified that they had been visited on four or five separate occasions in the 1970s and 1980s by McKeon, who had died two or three years prior to the trial. McKeon had told the Espositos that she had lived on the Cosey Beach Avenue premises from the early 1920s until the property was sold. She described not only the use made of the disputed parcel but the location of fencing and rocks that were put in place to delineate her family's use of the property. James Esposito testified that he understood that McKeon may have been a onetime owner of lot 13. A photograph taken of McKeon upon one of her visits was introduced into evidence.

The plaintiff argues that an examination of the East Haven land records, and the copies of the various deeds in the chain of title that were introduced in evidence, fails to reveal any "Lucy" McKeon as a record owner of lot 13. This, coupled with other inconsistencies in what she is claimed to have said, causes the plaintiff to conclude that "[t]here is no clear and positive proof that 'Lucy McKeon' ever existed; hearsay testimony regarding her assertions is tenuous at best." The plain-

tiff therefore argues that, as a matter of law, the evidence of the McKeon's family possession and use of the disputed premises is inadequate for the purpose of establishing adverse possession. We do not agree.

" 'Declarations as to the location of ancient boundaries are hearsay, and are not admissible in evidence unless it appears (1) that the declarant is dead, (2) that he would be qualified as a witness to testify if present, and especially that he had peculiar means of knowing the boundary, (3) that the statement was made before the controversy in suit arose, and (4) that he had no interest to misrepresent the truth in making the declaration.' *Mentz* v. *Greenwich,* 118 Conn. 137, 144, 171 A. 10 [1934]; *Borden* v. *Westport,* 105 Conn. 139, 149, 134 A. 803 [1926]; *Turgeon* v. *Woodward,* 83 Conn. 537, 541, 78 A. 577 [1910]. 'By "no interest to misrepresent" is meant freedom from selfish motive or self-interest, or personal advantage; disinterested not merely in the sense of having no pecuniary interest, but in the broader sense of being absolutely impartial and indifferent to the controversy on trial. . . . From earliest times we have excluded the declaration of the deceased owner of land as to his own boundary, for the reason that he was interested, and so the source of his title would forbid confidence to be placed in it. . . . For like reason, we have held similar declarations of one from whom the claimant derives title, to be inadmissible.' *Turgeon* v. *Woodward,* supra, 542." *Putnam, Coffin & Burr, Inc.* v. *Halpern,* 154 Conn. 507, 514, 227 A.2d 83 (1967).

Had it been unequivocally determined that McKeon was in fact a former owner of lot 13, her hearsay declarations as to the bounds of the property being adversely possessed would have been, as a matter of law, inadmissible. This not having been conclusively determined, and in fact having been disputed by the plaintiff, her level of disinterest and therefore the admissibility of

her testimony, the other criteria having been satisfied, became a question of fact to be determined by the trier. This and the weight to be ascribed to her declarations, many of which were corroborated by the physical evidence presented and the testimony of other witnesses, were matters peculiarly within the province of the trier of fact. "Nothing in our law is more elementary than that the trier is the final judge of the credibility of witnesses and of the weight to be accorded their testimony." *Morgan* v. *Hill,* 139 Conn. 159, 161, 90 A.2d 641 (1952). We will not intrude upon this province unless the facts found are legally or logically inconsistent with the trial court's conclusion. *Lengyel* v. *Peregrin,* supra, 288. This is not the case here.

The plaintiff next argues that the Espositos failed to establish their claim of adverse possession by clear and convincing evidence because of significant defects in the testimony of Raymond R. Grinold. Grinold, an owner of lot 13 from 1967 to 1973, testified by deposition as his residence out of the state prevented his personal appearance at trial.[4] At Grinold's deposition, counsel requested that he outline upon a map the limits of his use of the disputed premises. Having done so, he was then asked a series of questions concerning the particulars of this use. At the time of trial, the map used by Grinold was not introduced into evidence. The plaintiff argues that the missing map is essential to an understanding of the testimony contained in the deposition and that without it, the evidential value of the deposition testimony is fatally compromised. We do not agree.

---

[4] Practice Book § 248 (1) provides in part: "At the trial of a civil action . . . any part or all of a deposition . . . may be used against any party who was present or represented at the taking of the deposition . . . in accordance with any of the following provisions . . . (d) The deposition of a witness . . . may be used by any party for any purpose if the court finds . . . 2. that the witness . . . is out of the state and will not return before the termination of the trial or hearing . . . ."

Examination of the record discloses that the plaintiff's parcel, including the portion in dispute, was essentially rectangular, being approximately 125 feet on Cosey Beach Avenue, 143 feet on Long Island Sound, 150 feet on the east and 158 feet on the west. The portion in dispute contained approximately 5000 square feet. Despite these modest dimensions, the record further discloses 11 maps, 15 aerial photographs and 48 other photographs all depicting some portion of the disputed premises.

One of the maps in evidence (exhibit D) is entitled "Map Showing Agreed Settlement Of Property Boundary Dispute Between Nancy M. Esposito And First Connecticut Small Business Investment Company, Inc.-August-1985, East Haven, Connecticut, Survey By-R. J. Schatzlein, Scale Of Map - 1''-20'." Examination of the deposition discloses that Grinold was using a map entitled "Map Of Nancy M. Esposito To Property, East Haven, Connecticut, Dated April 1985, Surveyed by R. J. Schatzlein, Scale Of Map, 1''-20'." The Grinold map depicted a property to the west of the Esposito parcel as belonging to First Connecticut Small Business Investment Company, Inc. Exhibit D contains an identical notation. The Grinold map depicted the northerly boundary of the Espositos' parcel as having a dimension of 37.10'. Exhibit D has an identical dimension for the same northerly boundary. The Grinold map contained a reference to an "Existing Bituminous Driveway." Exhibit D has an identical reference. The Grinold map depicted an "Existing Wood Rail Fence" running northward 62.86 feet from Long Island Sound. Exhibit D contains a reference to such a fence and an identical dimension. The Grinold map showed a fence running eastward from the northerly terminus of the wood fence that ran northward from Long Island Sound. Exhibit D depicts an "Existing Wood Rail Fence" in precisely the same location.

It is evident from the deposition that the map to which Grinold referred in his testimony was very similar, if not identical, to the map that was in evidence before the trial court. It only takes a small measure of common sense to conclude that two maps made by the same person, within four months of one another, depicting the same area, which is not claimed to have changed, are probably going to be nearly identical. Despite the fact that the trial court did not have the benefit of seeing the lines that Grinold placed on the map, by examining the content of his testimony in the context of exhibit D and the many other items of graphic evidence, the trial court could have easily and clearly understood the full implications of Grinold's testimony. We see no basis for concluding that this evidence was insufficient as a matter of law to support the Espositos' claim of adverse possession. Again, the trier of fact is the final judge of the weight to be accorded admissible testimony. *Morgan* v. *Hill,* supra, 161. "In effect, the [plaintiff is] seeking to have this court retry the case. This, of course, we cannot do." *Whitney* v. *Turmel,* supra, 148.

The plaintiff next argues that the Espositos' claim to title by adverse possession was extinguished by a judgment of strict foreclosure rendered by the Superior Court on May 18, 1973, and recorded in the East Haven land records on January 6, 1977. The plaintiff further claims that the adverse possession interest, if not extinguished by the earlier foreclosure, was certainly terminated by a tax foreclosure proceeding instituted by the town of East Haven in which the Superior Court susbsequently rendered a judgment of foreclosure by sale. We do not agree for the reason that the property in dispute was not included in the parcels that were the subject of either foreclosure proceeding.

All the instruments recorded on the East Haven land records in connection with both foreclosures described

the property being foreclosed as follows: "NORTH by Cosey Beach Avenue; *EAST by land now or formerly of John J. McKeon and Anna H. McKeon;* SOUTH by Long Island Sound; and WEST by land now or formerly of Charles S. MacGilvray." (Emphasis added.) While the statement concerning the east boundary was accurate in that John J. McKeon and Anna H. McKeon had owned the property to the east, it begged the question as to where the east boundary was. By the time the foreclosure proceedings were commenced, there was evidence that the west boundary of the property of John J. McKeon and Anna H. McKeon had been moved westward as the result of the adverse use that owners had made of the property since 1921. Thus, the statement recorded on the East Haven land records that the property being foreclosed was bounded on the east by the McKeons put neither the public in general, nor the Espositos' predecessors in particular, on notice that any claim was being raised that the location of the east boundary was any place other than where the McKeons' predecessors claimed that it was.

While it is the "rule that adjoining property referred to in a deed as a boundary may be regarded as a monument. *Post Hill Improvement Co.* v. *Brandegee,* 74 Conn. 338, 50 Atl. 874 [1902]; *Ensign* v. *Colt,* 75 Conn. 111, 116, 52 Atl. 829, 830 [1902]; *Bielby* v. *Blinn,* 112 Conn. 1, 4, 151 Atl. 357 [1930] . . . *that rule cannot apply to fix a boundary where the boundary of the land referred to is itself uncertain.*" (Emphasis added.) *Patzloff* v. *Kasperovich,* 116 Conn. 440, 442, 165 A. 349 (1933); see also *Barrs* v. *Zukowski,* 148 Conn. 158, 165, 169 A.2d 23 (1961).

Had the description said, "EAST by Lot 13 on a map entitled 'Map Of Shore Lots, At Silver Sands, Town Of East Haven, Connecticut, Owned By Marion Hassan, John S. Madden Agent, 1900', on file in the East Haven land records, being land now or formerly of John

J. McKeon and Anna H. McKeon," then there would have been an unequivocal declaration that the foreclosing party was claiming that the location of the east boundary of the foreclosed property extended all the way to the west boundary of lot 13, thereby enclosing in such a description the area that subsequently became the subject of this law suit. We conclude that the foreclosure proceedings claimed by the plaintiff did not include the premises that are in issue here.

The plaintiff finally argues that the trial court erred in dismissing its libel and slander of title claims for failure to prove malice. The record discloses that on October 5, 1984, Nancy M. Esposito filed an affidavit on the East Haven land records in accordance with General Statutes § 47-12a.[5] Thereafter, on December 4, 1985, Esposito recorded a copy of the Schatzlein map earlier described along with a quitclaim deed to herself of the disputed parcel"B" as it was depicted on the map. The plaintiff claimed that the Espositos did all of these

---

[5] General Statutes § 47-12a provides: "(a) An affidavit, which states facts relating to the matters named in subsection (b) and which may affect the title to or any interest in real estate in this state, and which is made by any person having knowledge of the facts or competent to testify concerning them in open court, may be recorded in the land records of the town in which the real estate is situated. If so recorded, and if the affiant is dead or otherwise not available to testify in court, then the affidavit, or a certified copy of it, is admissible as prima facie evidence of the facts stated in it, so far as those facts affect title to real estate in any action involving the title to that real estate or any interest in it.

"(b) The affidavits provided for in this section may relate to the following matters: Age, sex, birth, death, capacity, relationship, family history, heirship, names, identity of parties, marital status, *possession or adverse possession, adverse use,* residence, service in the armed forces, conflicts and ambiguities in description of land in recorded instruments, and the happening of any condition or event which may terminate an estate or interest.

"(c) Every affidavit provided for in this section shall include a description of the land, title to which may be affected by facts stated in the affidavit, and shall state the name of the person appearing by the record to be the owner of the land at the time of the recording of the affidavit. The town clerk shall index the affidavit in the name of that record owner." (Emphasis added.)

things in a reckless, malicious, wanton manner thereby creating a cloud on the plaintiff's title. At the close of the plaintiff's case, the trial court granted the defendants' motion to dismiss the libel and slander claims for failure to establish a prima facie case. The plaintiff now argues that the trial court erred in doing so. We do not agree.

The plaintiff claims that the defendants' failure to come forward at the time of the foreclosure proceedings and contest the disputed boundary constituted evidence of their malice and bad faith in subsequently placing their claims upon the land record. As discussed above, we find nothing in the foreclosure proceedings that serves to charge any of the defendants with knowledge that the plaintiff's predecessors were contesting the boundary as it had come to exist through years of adverse use. This is clearly not an adequate basis to support an inference of malice.

Finally, the plaintiff argues that the trial court erred in concluding, as an alternative basis for supporting the Espositos' claim, that an easement by implication had been established. Since the trial court correctly concluded that the Espositos had acquired a fee simple title by adverse possession in the disputed premises, any claim concerning an easement by implication is rendered moot.

There is no error.

In this opinion the other justices concurred.