IN THE SUPREME COURT
OF THE VIRGIN ISLANDS

**FILED**

April 23, 2024 11:19 AM
SCT-Civ-2023-0015
VERONICA HANDY, ESQUIRE
CLERK OF THE COURT

**For Publication**

# IN THE SUPREME COURT OF THE VIRGIN ISLANDS

|  |  |
|---|---|
| **ESTATE CHOCOLATE HOLE LANDOWNERS' ASSOCIATION, INC.,** <br> Appellant/Plaintiff, <br><br> v. <br><br> **ADRIAN CENNI and MAX ARC, LLC,** <br> Appellees/Defendants. | ) **S. Ct. Civ. No. 2023-0015** <br> ) Re: Super. Ct. Civ. No. 383/2015 (STT) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

On Appeal from the Superior Court of the Virgin Islands

Argued: November 14, 2023
Filed: April 23, 2024

Cite as: 2024 VI 20

**BEFORE:** **RHYS S. HODGE**, Chief Justice; **MARIA M. CABRET**, Associate Justice; and **IVE ARLINGTON SWAN**, Associate Justice.

**Malorie Winne Diaz, Esq.**
**Gregory Adam Thorp, Esq. (argued)**
Dudley Rich LLP
St. Thomas, U.S.V.I.
    *Attorneys for Appellant,*

**J. Daryl Dodson, Esq.**
Moore Dodson Russell & Wilhite, P.C.
St. Thomas, U.S.V.I.
    *Attorney for Appellees.*

## OPINION OF THE COURT

**HODGE, Chief Justice.**

¶ 1     The Estate Chocolate Hole Landowners' Association Inc. ("ECHLA") appeals from the Superior Court's February 28, 2023 judgment which, for reasons given in findings of fact and conclusions of law entered on December 29, 2022, found that Adrian Cenni and Max Arc, LLC possessed an implied easement permitting them to develop a road suitable for vehicular access on

*Estate Chocolate Hole v. Cenni*        2024 VI 20
S. Ct. Civ. No. 2023-0015
Opinion of the Court
Page 2 of 16

a parcel owned by the ECHLA.  For the reasons that follow, we affirm the judgment below.

## I. BACKGROUND

¶ 2      Arsene Massac acquired title to all the land that comprises Estate Chocolate Hole in St. John by deed of conveyance recorded on September 22, 1950.  Over the next several decades, Massac developed the property and subdivided it into separate lots which he then sold to various individuals.  In 1962, Massac filed a drawing with the Cadastral Division of the Department of Public Works—P.W.D. Drawing No. D9-325-T62 (hereafter "T62")—which depicted a road, later designated as Parcel 557 (also referred to as the "Access Road"), that led to Parcel 186—designated as the "Hart Bay Community Beach Park"— and which abutted numerous lots, including the land that would eventually become Parcels 501 and 502.

¶ 3      When Massac sought to construct a condominium complex in 1985, several owners of the subdivided lots sued him in the District Court of the Virgin Islands (the "*Bachman* litigation").  After its formation, the ECHLA intervened in the *Bachman* litigation, and recorded notices of *lis pendens* on the land owned by Massac, including the land that would eventually become Parcels 501 and 502.  The ECHLA ultimately entered into a settlement agreement with Massac, which it also recorded with the Recorder of Deeds. This settlement agreement required Massac, among other things, to develop a new subdivision plan, and to convey to the ECHLA "all road rights of way to existing and proposed roads as shown on a Plan of Subdivision of Estate Chocolate Hole – 1985 to be attached as Exhibit 2 to this Agreement." However, the settlement agreement did not contain any document labelled as "Exhibit 2."

¶ 4      The settlement agreement also set forth the characteristics of this plan, which included a sentence providing that "[t]he Plan shall eliminate the two roadways to the beach of Lot 186, except that an undeveloped right of way shall continue to exist."  And while the settlement

agreement provided for Massac to record this plan, no plan was developed or recorded.

¶ 5      In accordance with the settlement agreement, Massac executed two quitclaim deeds, both dated June 3, 1986, one of which conveyed Parcel 186 to the ECHLA, and another (hereafter the "Roads Deed") which conveyed "all the private estate roads located in the subdivision of Estate Chocolate Hole" to the ECHLA, as shown on a map "dated July, 1973, No. 911 . . . exempting therefrom all roads shown hereon with red bordering." This map, however, was not attached to the Roads Deed.

¶ 6      The ECHLA failed to record either of these quitclaim deeds. Rather, the ECHLA, through its counsel, requested that Massac complete a new survey, given that in the deed "reference is made to a surveying map that is not available." Massac, however, never completed this survey or produced a plan, which led to more than a decade of proceedings in the *Bachman* litigation seeking to enforce the settlement agreement, which commenced with a January 15, 1987 motion by the ECHLA to enforce the agreement. Ultimately, the *Bachman* parties entered into a March 14, 1995 consent judgment in which they agreed that the ECHLA would prepare the subdivision plan itself. The plan prepared by the ECHLA designated the access road as "Parcel 557 Undeveloped Right of Way" with a notation stating, "roadway eliminated per 5(a) of 'Settlement Agreement.'" The ECHLA recorded the consent judgment, and on January 7, 1999 filed a "Satisfaction of Judgment" with the District Court in the *Bachman* case. The next day, January 8, 1999, the ECHLA recorded a "Release of Settlement Agreement" that resulted in the Recorder of Deeds marking the previously recorded settlement agreement on Parcel 501 as "cancelled."

¶ 7      During the pendency of the proceedings to enforce the settlement agreement in the *Bachman* litigation, Massac continued to subdivide and sell parcels. He hired surveyor Barry Hurst to prepare and register official drawing P.W.D. D9-325-T89 (hereafter "T89"), which

established two residential parcels designated as Parcels 501 and 502 from Parcel 557 with the remaining parcel designated as Parcel 557 Remainder. The official drawing shows a vehicular turnaround and parking area designated for use by both parcels as "Easement A." On April 21, 1989, Massac executed a warranty deed that conveyed an undivided one-half interest in Parcel 501 to Carol Galat Hurst in common with an undivided one-half interest in Parcel 501 to Sinda J. Galat and Edward W. Galat (collectively "the Galats"), which was recorded on May 5, 1989. Shortly after the conveyance, the ECHLA, at the Galats' request, provided a May 3, 1989 cancellation of the *lis pendens* on Parcel 501, which was recorded on May 8, 1989.

¶ 8    After the purchase, the ECHLA and the Galats repeatedly discussed the possibility of developing Parcel 557 to allow for vehicular traffic. The ECHLA, however, repeatedly declined these requests, and in 1994 constructed stone steps on Parcel 557 right above the boundary of Parcel 501 to assist walkers with a steep and muddy portion of the Access Road to the beach.

¶ 9    On April 1, 2003, the Galats conveyed their interest in Parcel 501 by warranty deed to Carol Hurst and Jane Crowe, who shortly thereafter entered into a contract with Trip Stewart to purchase Parcel 501. Around this time, Cenni—the current owner of another parcel at Estate Chocolate Hole, and the sole member of Max Arc—learned of Stewart's contract, and executed a "Partial Assignment and Assumption of Contract" on December 22, 2023, in which Stewart assigned to Cenni the right to purchase Parcel 501 to Max Arc. Ultimately, Max Arc purchased Parcel 501 on May 26, 2004.

¶ 10   Nearly a year later, Cenni began to explore the possibility of developing the Access Road on Parcel 557 for vehicular access. At a May 31, 2005 meeting of the ECHLA Board of Directors, Cenni requested the ECHLA's assistance in obtaining approval of a Coastal Zone Management (CZM) permit to establish a road where the existing foot path runs, which according to the minutes

of the meeting resulted in "numerous legal discussions back and forth . . . regarding the right of way being just a footpath to wetlands that were questionably suited for building." Thereafter, on October 25, 2005, the ECHLA obtained a quitclaim deed from Massac's estate, which again conveyed to it all the roads previously conveyed in the earlier Roads Deed. This October 25, 2005 deed was then recorded on February 7, 2007.

¶ 11     At some undetermined point in early 2011, Max Arc filed a CZM permit application with the Virgin Islands Department of Planning and Natural Resources (DPNR) for the purpose of clearing an "established estate road ROW" and for "residential property access," in which it listed Parcel 501 as the location of the proposed activity and affirmed that it was "Record title owner (fee simple)." The ECHLA sent a letter opposing the permit application, in which it communicated that it was the owner of Parcel 557, that the asserted right of way was located on Parcel 557 and not Parcel 501, and that the *Bachman* settlement agreement required that the Access Road on Parcel 557 remain undeveloped. Ultimately, the DPNR denied the permit application "based on legal issues raised during the permit process" that reflected "insufficient evidence of legal interest to support granting a permit at this time."

¶ 12     On August 17, 2015, Cenni and Max Arc filed a complaint against the ECHLA in the Superior Court, asserting various equitable claims for declaratory and injunctive relief as well as requesting damages for fraudulent and negligent misrepresentation. Specifically, Cenni and Max Arc sought a declaration that they possess an easement across Parcel 557 that they could develop to permit vehicular access to Parcel 501, an injunction to prevent the ECHLA from interfering with those rights, and money damages to compensate it for the denial of its CZM permit application based on the ECHLA's representations to the DPNR.

¶ 13     After numerous proceedings not relevant to this appeal, the ECHLA filed a motion for

summary judgment on August 4, 2017, which Cenni and Max Arc opposed on August 25, 2017. The Superior Court, however, never issued any ruling on the summary judgment motion, but instead set the matter for a bench trial which commenced on May 7, 2018, and concluded on May 10, 2018. The Superior Court did not issue a ruling at the conclusion of the bench trial but directed the parties to file proposed findings of fact and conclusions of law, which they did.

¶ 14     Thereafter, the matter remained dormant for four years until the Superior Court issued findings of fact and conclusions of law and a memorandum of decision on December 29, 2022. The Superior Court found that no express easement existed and denied the claims for money damages for fraudulent and negligent misrepresentation. However, the Superior Court found that Massac created an implied easement to use Parcel 557 for vehicular traffic when he conveyed Parcel 501 to the Galats, and that Cenni and Max Arc therefore possessed the authority to develop Parcel 557 for this purpose, including applying for a CZM permit. At the parties' request, the Superior Court entered judgment based on these findings of fact and conclusions of law on February 28, 2023. The ECHLA timely filed a notice of appeal with this Court on March 30, 2023. *See* V.I. R. App. P. 5(a)(1).

## II. DISCUSSION

### A. Jurisdiction and Legal Standard

¶ 15     Pursuant to the Revised Organic Act of 1954, this Court has appellate jurisdiction over "all appeals from the decisions of the courts of the Virgin Islands established by local law[.]" 48 U.S.C. § 1613a(d). Title 4, section 32(a) of the Virgin Islands Code vests this Court with jurisdiction over "all appeals arising from final judgments, final decrees, [and] final orders of the Superior Court." Because the Superior Court's February 28, 2023 judgment resolved all of the claims between the parties, it is a final judgment under section 32(a). *Joseph v. Daily News Publishing Co., Inc.*, 57

V.I. 566, 578 (V.I. 2012); *see also* 48 U.S.C. § 1613a(d).

¶ 16    This Court exercises plenary review over all questions of law, and reviews factual findings only for clear error. *Brathwaite v. People*, 60 V.I. 419, 426 (V.I. 2014).

### B. Failure to Rule on Summary Judgment Motion

¶ 17    Although not directly raised as an issue on appeal, the ECHLA repeatedly makes references in its appellate brief to the Superior Court's failure to issue any ruling on its August 4, 2017 summary judgment motion, instead proceeding to enter a judgment after trial.  As the ECHLA correctly recognizes, the entry of a final judgment after trial constitutes an implicit denial of the summary judgment motion. *Anthony v. Indep. Ins. Advisors, Inc.*, 56 V.I. 516, 534 (V.I. 2011) (citing *Addington v. Farmer's Elevator Mut. Ins. Co.*, 650 F.2d 663, 666 (5th Cir. 1981)). Moreover, courts have generally held that any error made with respect to the denial of summary judgment motion is either moot or harmless after a court issues a final judgment on the same issues after trial.  *See, e.g., Transp. Ins. Co. v. TIG Ins. Co.,* 136 Cal.Rptr.3d 315, 336 (Cal. Ct. App. 2012); *R.C. Olmstead, Inc. v. GBS Corp.*, No. 08 MA 83, 2009 WL 4981226, at *3-4 (Ohio Ct. App. Dec. 18, 2009) (unpublished); *Willette v. Smith*, No. CX-97-1410, 1998 WL 171404, at *2 (Minn. Ct. App. Apr. 14, 1998) (unpublished).

¶ 18    Because entry of a final judgment after trial necessarily moots the failure to rule on a summary judgment motion, the question of whether the Superior Court is permitted to simply ignore a summary judgment motion and instead proceed to trial without addressing the motion is the type of issue unlikely to ever come before this Court on direct appeal. Thus, we take this opportunity to consider the question so as to provide guidance to the Superior Court in future cases.

¶ 19    The authority for a litigant to file a motion for summary judgment flows from Rule 56 of the Virgin Islands Rules of Civil Procedure, which permits a party to move for summary judgment

on all or part of a claim or defense, and provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law," while further requiring that "[t]he court should state on the record the reasons for granting or denying the motion." V.I. R. CIV. P. 56(a). The purpose of summary judgment is to implement Rule 1 of the Virgin Islands Rules of Civil Procedure to promote "the just, speedy, and inexpensive determination of every action and proceeding" by creating a mechanism to eliminate unnecessary trials, thus conserving both scarce judicial resources as well as reducing the costs to the parties. *See Bourne v. Tahoe Reg'l Planning Agency*, 829 F. Supp. 1203, 1205 (D. Nev. 1993) (noting that summary judgment allows courts to avoid unnecessary trials when there is no dispute over material fact before the court); *see also* Martin B. Louis, *Intercepting and Discouraging Doubtful Litigation: A Golden Anniversary View of Pleading, Summary Judgment, and Rule 11 Sanctions Under the Federal Rules of Civil Procedure,* 67 N.C. L. REV. 1023, 1041-42 (1988) (stating that increased pressure of court congestion and escalating litigation costs paved the way for more liberal application of summary judgment).

¶ 20    This Court has already established the general rule that "a court can never exercise its discretion to simply ignore a claim that a party has brought squarely before it." *Bryan v. Fawkes*, 61 V.I. 416, 476 (V.I. 2014) (collecting cases). Certainly, there are a very small number of exceptions to this principle; for instance, Rule 29(b) of the Virgin Islands Rules of Criminal Procedure expressly permits the Superior Court to decline to rule on a pre-verdict motion for judgment of acquittal made during trial and instead to submit the case to the jury. These few exceptions, however, are expressly authorized by the rules and serve a clear purpose. For example, like its federal counterpart, Criminal Rule 29(b) permits a judge to defer a ruling on a pre-verdict motion made during trial in order to prevent the court from "feel[ing] pressured into making an

immediate, and possibly erroneous, decision" on what is typically an oral motion made in the midst of trial that could eliminate the prosecution's right to appeal. *See* FED. R. CRIM. P. 29 Advisory Committee Notes. But there is nothing in either Civil Rule 56 or any other provision of the Virgin Islands Rules of Civil Procedure that permits the Superior Court to effectively ignore a duly filed and fully briefed summary judgment motion and instead proceed directly to trial. Nor is there any benefit realized from doing so, in that summary judgment motions are filed before trial and in writing, with the judge not subject to any time pressure to resolve it with a quick, potentially off-the-cuff ruling. Accordingly, we conclude that the Superior Court committed error when it failed to rule on the ECHLA's summary judgment motion and instead proceeded directly to a trial on the merits, but that the error is ultimately harmless in this case where the ECHLA has not expressly sought reversal on that basis and a trial on the merits has occurred.

### C. Easement by Implication

¶ 21    The ECHLA asserts that the Superior Court erred when it determined that Defendants held an easement by implication for the use of Parcel 557 to provide vehicular access to Parcel 501. As the parties and the Superior Court correctly recognize, this Court recently adopted the factors set forth in § 2.13 of the RESTATEMENT (THIRD) OF PROPERTY: SERVITUDES as the rule governing the creation of implied easements in the Virgin Islands. *Streibich v. Underwood*, 74 V.I. 488, 505-06 (V.I. 2021). Pursuant to this approach,

> In a conveyance or contract to convey an estate in land, description of the land conveyed by reference to a map or boundary may imply the creation of a servitude, if the grantor has the power to create the servitude, and if a different intent is not expressed or implied by the circumstances:
> (1) A description of the land conveyed that refers to a plat or map showing streets, ways, parks, open space, beaches, or other areas for common use or benefit, implies creation of a servitude restricting use of the land shown on the map to the indicated uses.
> (2) A description of the land conveyed that uses a street, or other way, as a

> boundary implies that the conveyance includes an easement to use the street or other way.

*Id.* at 505 (quoting RESTATEMENT (THIRD) OF PROPERTY: SERVITUDES § 2.13). According to the ECHLA, the Superior Court erred in applying these factors because Cenni and Max Arc purportedly failed to prove that Massac (1) had title to or owned an interest in Parcel 557 when he conveyed Parcel 501 to the Galats on April 21, 1989, and thus could not legally create an implied easement; and (2) intended to provide vehicle access to Parcel 501 over Parcel 557. Each issue is addressed in turn.[1]

1. <u>Legal Authority of Massac to Create an Implied Easement Over Parcel 557</u>

¶ 22    There is no dispute that Massac owned Parcel 557 from September 22, 1950, to at least June 3, 1986, when he executed the Roads Deed that purported to transfer Parcel 557 to the ECHLA. The parties do dispute, however, the legal effect of the Roads Deed as well as the ECHLA's failure to have ever recorded that deed on the capacity of Massac to create an implied easement through the April 21, 1989 warranty deed conveying Parcel 501 to the Galats.

¶ 23    It is well-established that "the failure to record [a] deed d[oes] not have any effect on its validity, for under Virgin Islands law a person may transfer ownership of real property during his or her lifetime 'by a deed of conveyance or other instrument in writing' that is 'signed by the person' doing the transfer or his agent 'and executed with such formalities as required by law.'" *Harvey v. Christopher*, 55 V.I. 565, 574 (V.I. 2011) (quoting 28 V.I.C. § 241(a)(2)). Therefore, if

---

[1] In its appellate brief, the ECHLA challenges only the portion of the February 28, 2023 judgment that found the existence of an implied easement and authorized Cenni and Max Arc to develop Parcel 557 based on that implied easement. Because Cenni and Max Arc have not cross-appealed from the Superior Court's denial of its claims for fraudulent and negligent misrepresentation and have not asserted the existence of an express easement as an alternate basis for affirmance, the existence of an implied easement is the only issue on appeal.

the conveyance of Parcel 557 from Massac to the ECHLA by the Roads Deed satisfied all other requirements of Virgin Islands law, the ECHLA would have become the owner of Parcel 557 on June 3, 1986, whether it elected to record its interest or not.

¶ 24    Here, there is no dispute over the fulfillment of most of the formalities required by law, such as that the deed be "executed in the presence of two witnesses," 28 V.I.C. § 42(a), or that the person signing the deed be "of lawful age." 28 V.I.C. § 41. The question here, however, is perhaps the most fundamental affecting a deed: does it contain "a description of the property sufficient to identify it with reasonable certainty" so that it is clear what property Massac intended to convey to the ECHLA? *Streibich*, 74 V.I. at 504.

¶ 25    The Roads Deed purported to convey from Massac to the ECHLA

> forever, in fee simple absolute, all the private estate roads located in the subdivision of Estate Chocolate Hole No. 11 Cruz Bay Quarter, St. John, U.S. Virgin Islands, as per V.I. Engineering and Surveying map dated July, 1973, No. 911 attached thereto and by this reference made a part hereof, exempting therefrom all roads shown thereon with red bordering, subject to easements of record.

(J.A. 159.)    However, as noted earlier, the Roads Deed did not contain any attached map. According to Cenni and Max Arc, these failures rendered the conveyance void.[2]

¶ 26    As this Court previously recognized, "[a] deed is a contract, and thus in most circumstances the principles of contract interpretation govern." *Streibich*, 74 V.I. at 502 (collecting cases). A contract is void when "there is no meeting of the minds over the terms of the contract itself, proving that a contract was never formed." *Brouillard v. DLJ Mortg. Capital, Inc.*, 63 V.I. 788, 794 (V.I. 2015). Thus, for a valid deed to exist, there must be evidence that the parties agreed on what land

---

[2] Although Cenni asserted in the Superior Court proceedings that the deed had been ineffective to convey anything for this reason, the Superior Court never addressed the issue, holding instead that the deed was void due to its failure to be recorded.

Massac would convey to the ECHLA. Because the inquiry is whether the parties mutually agreed on what land constitutes the conveyance, the failure to attach a referenced map to a deed will not, standing alone, necessarily void the conveyance in every instance. In fact, the Legislature has directed that

> Where there are certain definite details and ascertained particulars in the description, the addition of others which are indefinite, unknown, or false does not frustrate the conveyance, but it is to be construed by such particulars, if they constitute a sufficient description to ascertain its application.

28 V.I.C. § 47(1). In other words, the failure of the parties to actually attach a referenced map to a deed may be disregarded if other information, such as descriptions of the property in the deed itself, sufficiently describes the property the grantor intends to convey to the grantee.

¶ 27    This, however, is not such a case. The Roads Deed does not provide the metes and bounds of the property or otherwise attempts to describe the property independently of the unattached map. Rather, the property conveyed is described exclusively through reference to the map, in that it purports to convey "all the private estate roads located in the subdivision of Estate Chocolate Hole No. 11 Cruz Bay Quarter, St. John, U.S. Virgin Islands, as per V.I. Engineering and Surveying map dated July, 1973, No. 911 attached thereto and by this reference made a part hereof, exempting therefrom all roads shown thereon with red bordering." (J.A. 159.) Had the Roads Deed simply conveyed "all the private estate roads" as shown on the map, simply disregarding the reference to the map may result in a "sufficient description" of the property to ascertain the intent of the parties pursuant to the rule of construction codified in section 47(1). However, the inclusion of the phrase "exempting therefrom all roads shown thereon with red bordering" makes it impossible to determine what property Massac intended to convey to the ECHLA in the absence of either the referenced map or some sort of other language in the deed itself that indicates precisely

what roads Massac did and did not intend to convey. *See Pirkle v. Turner*, 588 S.E.2d 733, 745 (Ga. 2003) (holding deeds void for insufficient description when they were "indefinite as to certain courses, and contain no key by which to remove the indefiniteness"); *accord, Post Hill Imp. Co. v. Brandegee*, 50 A. 874, 876 (Conn. 1902). Consequently, the Roads Deed did not meet the minimum statutory requirements for a valid conveyance of Parcel 557 from Massac to the ECHLA, and thus Massac remained the owner of Parcel 557 when he sold Parcel 501 to the Galats.[3]

2. Intent to Create an Implied Easement

¶ 28    As noted above, it is not sufficient for Massac to have simply been the owner of Parcel 557 when he conveyed Parcels 501 and 502 to the Galats. Rather, Massac must *also* have intended to create an implied easement over Parcel 557 to provide vehicular access to Parcel 501. We conclude that Massac possessed this intent, albeit for different reasons than articulated by the Superior Court. *See V.I. Taxi Ass'n v. V.I. Port Auth.*, 67 V.I. 643, 683 n.26 (V.I. 2017) ("We have discretion to affirm the ruling of a lower court for reasons not addressed by that court if sufficient alternate grounds exist for doing so.").

¶ 29    In its December 29, 2022 findings of fact and conclusions of law, the Superior Court placed heavy emphasis on two factors in finding that Massac possessed an intent to create an easement: (1) that Parcel 557 forms the western boundary of Parcel 501; and (2) that the T89 drawing, which depicts Parcels 501 and 502, labels Parcel 557 as a "right of way," which the Superior Court construed as a synonym for "easement." But neither of these factors, <u>standing alone</u>, resolves the question of whether Massac intended to create an implied easement for vehicular access over

---

[3] Because we conclude that the Roads Deed did not constitute a valid conveyance of Parcel 557, we need not address whether Max Arc qualifies as an innocent purchaser entitled to the protections of title 28, section 124 of the Virgin Islands Code when it purchased Parcel 501.

Parcel 557 for the benefit of Parcel 501. That Parcel 501 borders Parcel 557—without more—may be relevant in an inquiry to determine the existence of an easement by necessity; however, by itself, it says nothing about whether Massac did or did not intend to create an easement when he transferred Parcel 501 to the Galats.[4]  And while the T89 drawing labels Parcel 557 as a "right of way," the question is not the existence of <u>a</u> right of way, but a <u>particular</u> right of way. It is undisputed that for decades Parcel 557 served as a right of way to access the beach on foot. While, for reasons explained below, it is doubtful that Massac intended this as a right of way only for pedestrian traffic, that the T89 drawing identifies Parcel 557 as a "right of way," without more, provides no insight as to whether Massac intended to have Parcel 557 serve as a right of way for vehicular and pedestrian traffic, or only for pedestrian traffic.

¶ 30      Nevertheless, the Superior Court ultimately arrived at the correct conclusion that Massac conveyed an implied easement for the use of Parcel 557 for vehicular access to Parcel 501 because of other aspects of both the deed and T89 drawing that provide powerful evidence of such an intent. The warranty deed, along with the T89 map, establishes an express easement—labeled "Easement A"—over Parcel 502, which depicts a cul-de-sac shaped loop connecting Parcels 501 and 502 to Parcel 557 that seems to serve no purpose except to permit a vehicle to turn around.  In addition, the warranty deed, contains the following provisions in its list of restrictions and covenants:

> (6) A landowner shall repair at his own expense and promptly restore to its original condition <u>any part of the estate roads damaged by motorized or other</u>

---

[4] Although title 28, section 47(4) of the Virgin Islands Code provides that "[w]hen a road or stream of water not navigable is the boundary, the rights of the grantor to the middle of the road or the thread of the stream are included in the conveyance, except where the road or bed of the stream is held under another title," the plain text of this provision only applies this rule when the deed specifically describes a road as a boundary to the property being conveyed.  *See Fossi v. Myers*, 533 P.2d 337, 339 (Or. 1975); *Wagner v. Chambers*, 42 Cal.Rptr. 334, 336-37 (Cal. Ct. App. 1965).  In this case, the warranty deed conveying Parcel 501 to the Galats does not identify the road as the boundary of Parcel 501.

> equipment used in such owner's construction or improvement of his lot.
>
> . . . .
>
> (9) No guest house, <u>detached garage</u>, trailer, tent or other structure of temporary nature shall be used for residential purposes prior to the erection or construction of the main dwelling.

(J.A. 290-91 (emphases added).)  It is unclear how one could conclude, given that Massac created of an express easement for the cul-de-sac loop and included covenant provisions clearly reflecting that vehicles may use estate roads and be stored in garages on the landowner's property, that Massac somehow did not intend to allow vehicles to use Parcel 557 for the purpose of ingress to and egress from Parcel 501.  This is bolstered further by the fact that Parcel 501 is inaccessible by any other road; that Massac used general language to refer to Parcel 557 as a "right of way" on the T89 drawing when he could have chosen more limiting language, e.g., describing it as a "pedestrian right of way" or "beach access right of way;" and that the right of way was depicted as being 20' wide.[5]

¶ 31    For these reasons, we conclude that Massac did intend to create an implied easement when he conveyed Parcel 501 to the Galats, and that by extension Max Arc received the benefit of such an easement when Parcel 501 was eventually conveyed to it.  Thus, we affirm the February 28, 2023 judgment of the Superior Court.

---

[5] It is, of course, possible that that Massac possessed a legitimate reason to not create an easement for the use of Parcel 557 for vehicular access to Parcel 501: the settlement agreement he executed to terminate the *Bachman* litigation in 1985 expressly required him to develop a plan, and specified that "The Plan shall eliminate the two roadways to the beach . . . except that an undeveloped right of way shall continue to exist."  (J.A. 189.) However, invocation of the settlement agreement as proof that Massac did not intend to create an easement providing for vehicular access actually proves too much, in that Massac had already deliberately chosen to ignore his obligations under the settlement agreement, resulting in the ECHLA filing a January 15, 1987 motion with the District Court to enforce the settlement agreement, with enforcement proceedings remaining ongoing through 1995.

### III. CONCLUSION

¶ 32    The Superior Court did not commit error when it found that an implied easement existed to permit vehicular access over Parcel 557 for ingress to and egress from Parcel 501.  Because Massac owned Parcel 557 at the time he conveyed Parcel 501 to the Galats, he possessed the legal authority to encumber Parcel 557 with a new easement.  The Superior Court also correctly held that Massac intended to create an implied easement.  Accordingly, we affirm the February 28, 2023 judgment of the Superior Court.

**Dated this 23rd day of April, 2024.**

                                          **BY THE COURT:**


                                          /s/ Rhys S. Hodge_____
                                          **RHYS S. HODGE**
                                          **Chief Justice**


**ATTEST:**

**VERONICA J. HANDY, ESQ.**
**Clerk of the Court**

**By:** _____/s/ Reisha Corneiro_____
    **Deputy Clerk**

**Dated**: ____April 23, 2024_____